Harman et ux. *v.* Chambers, Appellant.

Argued January 8, 1948. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Lee C. McCandless*, with him *Carmen V. Marinaro*, for appellant.

*John B. Nicklas, Jr.*, with him *Willis A. MacDonald, Henry S. Moore* and *McCready & Nicklas*, for appellees.

OPINION BY MR. JUSTICE JONES, March 22, 1948:

The suit involved in this appeal was instituted by Ernest M. Harman and Florence G. Harman, his wife, partners doing business under the trade name, Rail & Industrial Equipment Co., against Philip Chambers, a dealer in mining equipment, to recover (1) the price paid by the plaintiffs for three used hopper coal cars which, in alleged breach of contract, the defendant did not deliver, (2) the expenses incurred by plaintiffs in an effort to obtain delivery of the cars, (3) the profit they lost on the anticipated resale of the cars, and (4) the cost of advertising the cars for resale. The jury returned a verdict for the plaintiffs. After refusing the defendant's motion for a new trial, the court below entered judgment on the verdict; and the defendant appealed.

The facts giving rise to the controversy are as follows. At the conclusion of a transaction in the offices of the

Rail & Industrial Equipment Co. in New York City involving the sale and transfer of a locomotive, Ernest M. Harman requested Chambers to look out for available used gondola freight cars with a view to the plaintiffs' possible purchase of them. On September 7, 1943, Chambers called Harman by telephone and informed him that there were some used freight cars at Dunbar, Pennsylvania, destined for scrapping. Harman instructed Chambers to offer $1,000 apiece for three of them. As a result of this conversation Harman and Chambers met in Dunbar where Harman inspected one of the cars and was told by Chambers that the other two were in like condition. The car Harman saw was equipped with currently disapproved "arch-bar trucks" and, further, was not in "interchange" order. What that meant was that, while it remained in its then condition, it could not be moved as an individual piece of "rolling stock" from the rails of one railroad to another. Chambers assured Harman that he (Chambers), with his helpful railroad contacts, could have the cars shipped to Warren, Pennsylvania, to which point Harman wished to have them consigned for repair and repainting. According to Harman's testimony, elicited on cross-examination, Chambers agreed to put the cars in "interchange" order.

Harman then returned to New York City and from there, on September 9, 1943, he mailed a written order to Chambers, in routine course of business, ordering the three 50-ton used hopper cars and therein specifying,— "Cars to be put in interchange order for shipping empty on own wheels. Price F.O.T. Dunbar, Pennsylvania, $1000 each. Terms: Check for $3000 attached." Upon receipt of these papers, Chambers called plaintiffs' New York office by telephone and notified a Mr. LeFevre, then also a partner in the Rail & Industrial Equipment Co., that he was having difficulty getting the cars accepted for shipment and that he was unwilling to accept the responsibility of putting them in "interchange" order. On September 15th he mailed a letter to like effect

to Harman who, in the meantime, had warned Chambers not to cash the check if he could not put the cars in transit. Nonetheless, Chambers cashed the check on or about September 15th. Between that date and April 7, 1944, Harman made frequent inquiries and efforts to get Chambers to have the cars shipped to Warren, even going so far as to make a special trip to Dunbar with Chambers. The latter, meanwhile, had repeatedly stated that the cars had been shipped. The fact is, however, that the cars were never shipped; and on June 29, 1944, the plaintiffs instituted this action of assumpsit. The verdict which the jury returned after a thorough trial was "in the sum of $3,000 return check $244.30 undisputed expenses. $270.00 estimated interest or a total of $3,514.30".

The errors which the appellant, by his assignments, imputes to the lower court's refusal of his motion for a new trial relate chiefly to alleged errors in the charge to the jury and the court's failure to instruct the jury specifically on certain matters to which reference will be made later. It is to be noted at this point that the appellant seeks to raise these matters of complaint on the basis of a general exception to the charge and not by virtue of any specific exception. Consequently, only the actual existence of basic and fundamental trial error to the appellant's prejudice can legally avail him here in his quest for a new trial: see *Susser v. Wiley*, 350 Pa. 427, 430, 39 A. 2d 616.

In scrutinizing a trial court's instructions to the jury for possible error, the charge must be read and considered as a whole: *Walters v. Western & Southern Life Insurance Co.*, 318 Pa. 382, 389, 178 A. 499. If, when so viewed, it is not misleading, then it is not substantially erroneous, even though it may disclose inaccuracies, omissions or even misstatements: see *Walters* case, supra. And, that is particularly so where the complaining party had ample opportunity, before verdict, for correction in material regard but failed or neglected to

avail himself of it: *Cook v. Donaldson*, 296 Pa. 389, 393, 145 A. 920. In general, the principle applicable to a question of the sufficiency of a trial judge's charge is that where the given instructions are sound and cover all features of the case, as advanced by counsel, an appellate court will not reverse for the court's failure to instruct the jury on some point to which its attention was not directed timely except where the presentation of the issues involved is so imperfect and inadequate as to leave the jury practically without any proper guidance or direction on important points: *Schwartz v. Caplan*, 256 Pa. 239, 241, 100 A. 800.

The appellant's first assignment consists of a quotation of more than a page in length from the charge of the learned trial judge and supplies nothing more than a general exception to cite the supposed error therein. However, in his brief, the appellant makes use of this particular assignment to point out that, in the charge to the jury, the trial judge did not define specifically the law and the facts relating to "offer", "acceptance" and "counter offer" and he now contends that the court's failure in such regard constitutes basic and fundamental error. The contention is not well founded. In a full and comprehensive charge, the learned trial judge carefully and impartially analyzed the testimony of both sides, explained the parties' respective theories of the case, and expressly left it to the jury to determine whether the minds of the parties had met on relevant reciprocal undertakings and, if so, what their agreement was. It is, of course, true that the charge in this connection was not couched in legal terms of "offer" and "acceptance". Nor need it have been. It is sufficient that the issue as to the alleged contract was submitted to the jury clearly and fairly in terms readily understandable by the jury. Examination of the charge plainly reveals that such was the manner of the trial court's submission of the material issue as to the alleged contract. There is no just basis for any conclusion that the jury

was left practically without direction on this important point. Moreover, the appellant's present grievance is not over anything the court said but, rather, what it did not say,—at most, a negative fault not amounting to reversible error in the absence of an ignored request for instructions in cognate regard. Indeed, in the one instance where the defendant did request further instructions concerning the alleged contract the learned trial judge forthwith charged in the relation suggested without any indicated dissatisfaction therewith from the defendant.

In connection with the same assignment of error, the appellant argues that there was no contract to buy anything *from him* and that the plaintiffs failed to prove a breach of contract. The legal question imbedded in this contention goes to the right of action. In no way does it involve supposed error in the court's charge which is all that is brought into question by this appeal. The jury, after a fair and impartial submission of the related factual issues, settled them in the plaintiffs' favor; and, since there is evidence in the testimony of Harman, as well as of the defendant himself, to support those findings, they may not now be disturbed: *Dougherty v. Brandt*, 122 Pa. Superior Ct. 410, 413, 186 A. 419.

The second and third assignments of error follow the pattern of the first with long quotations from the court's charge to which no objection was made at trial and no specific exception then taken. Together, they are used as a basis for the appellant's argument that the learned trial judge erred in the measure of damages which he laid down to the jury. This contention is equally without merit. Generally speaking, the measure of damages applicable in a case of breach of contract is that the aggrieved party should be placed as nearly as possible in the same position he would have occupied had there been no breach. In other words, he is entitled to be reimbursed for the money actually paid out and for all reasonable and proper expenses incurred on the

faith of the contract: see *Purdy v. Massey*, 306 Pa. 288, 295, 159 A. 545. It is quite apparent that the verdict in this case, which the jury itemized, was arrived at by following the correct rule. It therefore is no longer important whether or not the trial judge correctly instructed the jury in such connection. Even where a charge is inadequate with respect to the elements of recoverable damage, the result of the sequential verdict may prove the error to have been legally harmless, such as where a verdict is reasonable although the court did not properly limit or restrict the measure of damages: see *Wilkinson v. North East Borough*, 215 Pa. 486, 491, 64 A. 734, and cases there cited, especially *Baker v. Irish*, 172 Pa. 528, 33 A. 558, and *Lewis v. Springfield Water Company*, 176 Pa. 237, 35 A. 186.

The fourth and last assignment complains of the lower court's refusal of a new trial merely upon a reassertion of the general reasons assigned and argued there. However, no argument was made in this Court on that assignment either in the appellant's printed brief or at bar. The assignment must therefore be taken as abandoned: see *Stoner Estate*, 358 Pa. 252, 259, 56 A. 2d 250; and *Beach's Estate*, 324 Pa. 142, 188 A. 108.

The relevant facts and issues were submitted to the jury in a fair, painstaking and impartial charge wherein neither basic nor fundamental error is apparent. The characterization made by Mr. Justice (later Chief Justice) MOSCHZISKER in *Hunter v. Bremer*, 256 Pa. 257, 265, 100 A. 809, so well fits the circumstances attending the instant appeal as to justify its repetition,—"It may be that the learned trial judge might have phrased the language of his charge a little more aptly in submitting certain phases of these issues, but he made no positive misstatements of law, nor did he say anything which probably misled the jury to the defendant's prejudice; moreover, the latter tendered no special requests for charge, nor did he except specially to the instructions of which he now complains. Under these circum-

stances, while, on the general exception thereto, the charge has been reviewed as a whole, yet, since the assignment under consideration presents no fault which amounts to more than a mere inadequacy, we will not reverse thereon".

Judgment affirmed.