## Voitasefski *v.* Pittsburgh Railways Company, Appellant, et al.

Argued October 4, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*D. H. McConnell,* for appellants.

*James P. McArdle,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 14, 1949:

This is an appeal from the refusal of the court below to grant a new trial in actions of trespass for injuries resulting from a collision between the automobile in which the appellees were riding and a street car. Ver-

dicts were rendered for the plaintiffs, in the sum of $16,944.53 for Constantine Voitasefski, $2,500 for Clara Voitasefski, $15,000 for Evelyn Voitasefski, and $15,000 for Laura Voitasefski Ruschak. The first named plaintiffs are husband and wife; the other plaintiffs are their daughters. All of them were in an automobile driven by Constantine Voitasefski.

Defendant brought in on a writ of Scire Facias Constantine Voitasefski as an additional defendant in the cases in which his daughters were plaintiffs. The four cases were tried together before the same jury, and resulted in individual verdicts in favor of each plaintiff against the Pittsburgh Railways Company, with a verdict generally in favor of the additional defendant in the three cases in which he was so named. Subsequently the defendant, Pittsburgh Railways Company, filed motions seeking new trials on the grounds that the verdicts were excessive; against the weight of the evidence; contrary to the evidence and the physical facts; based on testimony that was judicially incredible; errors in the charge dealing with the burden of proof; and in giving a charge that was too favorable to the plaintiffs' side of the case.

On the evening of September 2, 1945, Voitasefski was driving his automobile in a westerly direction on New Whitaker Way in the Borough of Homestead. When the automobile reached the intersection of Eighth Avenue there was a collision between it and the defendant's street car, which was being operated in a northerly direction on Eighth Avenue, where there are double car tracks. Both streets are wide thoroughfares. Voitasefski testified that he approached Eighth Avenue on his right side of the road and was entering Eighth Avenue between the large "island" in the center and the small "island" dividing the two lanes of traffic running west, on which he was approaching; that he was going ten miles an hour; and that when he reached the curb line

he was about 15 to 17 feet from the first Northbound car rail on which the street car by which he was struck was running; that he stopped and at that time he saw the street car approaching about 350 feet away; that he then moved up onto the tracks, turning somewhat to his left to go South, and when he got the front wheels in between the first two rails of the tracks the street car was about half way from Ravine Street, where he had first seen it, to Whitaker Way (a four lane highway), or about 175 feet away, and that when his front wheels were over the second rail he was struck by the street car on the left side of his automobile.

There was some testimony that the street car ran about 200 feet after the accident, and that the automobile continued on across the tracks and struck an iron pole at the west side of the street, which distance was estimated by a witness to be from 50 to 100 feet. The motorman and three defense witnesses testified that the street car ran only from 3 to 5 feet after the accident and stopped directly on the intersection. The motorman stated that as he entered the intersection he glanced up and saw this automobile about 75 feet to his right and coming down Whitaker Way at the rate of 60 miles an hour; that he could not get his car stopped in time and that when the automobile was about 7 feet from the car it pulled to its right as if to avoid him but struck into the right front portion of the car and shot across the street and disappeared; that he went about from 3 to 5 feet beyond where he was struck by the automobile before he stopped.

All the occupants of the automobile were severely injured. The conflicting evidence presented a case for the jury and defendant's complaint is as to the charge of the court. It says that "the Court failed to charge the jury as to the inherent improbability of Constantine Voitasefski's testimony that he had stopped 15 to 17 feet from the track, that the street car was then 350

feet away and moving toward him, that when he reached the first rail, a distance of 15 or 17 feet, the street car was 175 feet away, and when the front wheels of his automobile had crossed the second track the street car had come 175 feet and struck him on the left side of his automobile, near the door." Counsel asserts that "This is such highly improbable testimony that the Court should have called it to the attention of the jury and instructed the jury that they should regard it with care, since it means, when mathematically considered, that the plaintiff in crossing the distance from one rail to another, a distance of 5 feet 2½ inches, indicated that the street car in that time came 175 feet, which under any calculation would require the street car to approach him at a rate, if Voitasefski was going 10 miles an hour, of at least 150 miles an hour or more."

We assume that counsel in his argument to the jury stressed "the inherent improbability of Constantine Voitasefski's testimony". If he did not do so he was derelict in his duty to his client. But it was no part of the duty of the trial judge to make an argument in behalf of the defendant's contention. His function was to review the testimony clearly and to direct the jury to pass on its credibility.

Counsel for appellant say that "the defendant was charged with operating the street car at the high speed of 45 to 50 miles an hour, and that it ran 200 feet after the accident." Counsel argues that "This testimony, if believed, would have indicated a reckless degree of operation on the part of the operator, but the Court did not submit to the jury that the motorman and at least two disinterested witnesses testified that the street car did not run, after the accident, more than 3 to 5 feet, and that it was not going at more than 15 to 20 miles an hour. . . . it was of the most extreme importance that the jury should understand that no matter what the witnesses said about the speed, if the car stopped im-

mediately after the accident, such testimony must be regarded as untrue. This was one of the most important elements in the case, the failure of the court to explain to the jury how oral statements as to speed must be controlled by physical facts, if believed."

We assume that counsel made that argument also to the jury. The trial judge in reviewing the testimony referred to the fact that the motorman himself testified that the automobile was being driven about 60 miles an hour and that the street car was going about 15 miles an hour; also, that the street car went about three to five feet after the collision. The trial judge did not overlook the testimony of the defendant's witnesses. The court told the jury that the witness John Rusnak, a passenger on the street car, testified that ". . . all of a sudden . . . he saw a car approach from the right and thought that this car was going to hit about where the Rusnaks were sitting . . . the automobile struck the street car right in front at the door. Mr. Rusnak's glasses were knocked off. The street car stopped almost instantly, he said, went about three or four feet, the automobile went across the street up against a pole." The trial judge also reviewed the testimony of passenger Walter Scott: "He [Scott] was looking to the side where the doors were and that the street car passed the lumber yard and then he noticed an automobile making the bend up the Whitaker Road. He was talking to his wife and, as I recall, he took his eyes off the automobile, he said it was the only one he saw and then he said it hit the street car and made a crash and shook the street car, which went about three or four feet, and that the automobile went over against a pole on the cinder path, and that at the time of the accident the street car was not going more than twelve or fifteen miles an hour."

If counsel for the defendant was dissatisfied with the trial judge's summation of the evidence on his behalf, counsel should have called the trial judge's attention

to this at the conclusion of the charge. The trial judge after noting a general exception, asked counsel: "Is there anything, Gentlemen, we haven't covered which you think should be given to the Jury?". There was no response. Appellate courts are disinclined to reverse a judgment of a trial court for alleged inadequacy of the charge unless the inadequacy is such that the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error. See *Sears v. Birbeck*, 321 Pa. 375, 391, 184 A. 6. In *Hunter v. Bremer*, 256 Pa. 257, 100 A. 809, 812, Justice MOSCHZISKER said: ". . . while, on the general exception thereto, the charge has been reviewed as a whole, yet, since the assignment under consideration presents no fault which amounts to more than a mere inadequacy, we will not reverse thereon." If counsel after listening to a charge believes that something more should be said in regard to the testimony of certain witnesses, it is counsel's duty to request the trial judge so to amplify its charge as to cure the inadequacy. If the trial judge refuses a request thus made, a specific exception should be taken by counsel. The same procedure should be pursued if counsel believes that certain instructions should be eliminated or modified.

Complaint is made that "the court failed to impress upon the jury the superior right of way which was with the street car motorman." Charging as to the "dominant right" of the street car to the use of the tracks may be easily misleading to the jury unless it is also pointed out that even though the street car has the superior right of way, its motorman must exercise whatever care the circumstances require in a given situation. On this point the trial judge instructed the jury as follows: "Street cars are not held to the strict rule of control that is required of automobiles at public crossings, yet a motorman must exercise certain control to the extent

of slackening his speed if the circumstances are such as to make slackening of his speed reasonably necessary." We think this instruction was ample as to the respective rights of the motorman and the automobile operator at the time and place in question. Both the motorman and the operator of the automobile were required to do whatever was reasonably necessary to prevent the happening of the accident. The duty of due care remains upon a motorman at all times, as it remains upon every other person in charge of any instrumentality which may be dangerous to human safety.

The appellant makes further arguments as to what the court should have instructed the jury relative to the alleged contributory negligence of Voitasefski. If the charge was so replete with errors as appellant's counsel claims, it was certainly the duty of appellant's counsel to take a specific exception to the charge, as we have already pointed out. The trial judge told the jury, inter alia: "If it is your decision that there was negligence upon the part of Mr. Voitasefski, either alone or in concurrence with negligence upon the part of the motorman, that bars Mr. Voitasefski's right to a verdict in his favor against the Pittsburgh Railways Company, because under the law of Pennsylvania in this type of case, while there is no burden of proof on the plaintiff to disprove contributory negligence, if in making out his case or if from the evidence in the case a jury decides that the plaintiff himself was careless or negligent, that means he can't win and cannot recover a favorable verdict at your hands. His case must be free from any negligence on his part which contributed to the happening of the collision. . . . The law is, generally, that a plaintiff can not have a favorable verdict if the jury decides that the plaintiff himself or herself was guilty of any negligence which contributed to the happening of the collision and the resulting damage."

The court instructed the jury clearly as to the burden of proof resting on the plaintiff, that is, that the plaintiff must satisfy the jury by the fair weight of the evidence that the motorman was careless in the manner in which he operated the street car just prior to and at the moment of the collision. The court reviewed at considerable length the testimony in the case. The trial judge in his charge referred to the testimony of the motorman that when the street car had passed the lumber yard the motorman "could then get a view up Whitaker Road for about three hundred feet and there was nothing on the road so he kept on coming, and just before he reached the intersection an automobile coming from the direction of Kennywood cut to the left to go up Whitaker Road and the motorman said he slowed his street car. He said he was in the intersection, glanced right and saw this vehicle about seventy-five feet away. He said it kept on coming and then swung or turned right to avoid him and hit the right front part of his street car and shot across the street and stopped."

The trial judge correctly charged that the three guests in the automobile could not be charged with negligence because of the negligence, if any, of Voitasefski, the driver of the automobile. However, the trial judge in his charge said: "You will examine the conduct and actions of the women plaintiffs in order to determine whether or not they or any one of them was guilty of any negligence which contributed in any way to this accident. As I say, they were not driving the car. Under the law a guest is not required to be looking ahead as is demanded of a driver but when danger is known to the guest or is reasonably manifest to the guest, if such danger confronts the driver and the guest has adequate and reasonable opportunity to control or influence the situation for safety, then such guest can not sit by without warning and permit herself to be driven to her injury, because if she does she is guilty

of contributory negligence which would bar recovery. If the guest knows there is danger or that the situation is such that she must have known there was danger, then the guest must protest to the driver or warn him if there is time and opportunity to do so. A guest is not required to warn a driver of what the driver already knows and appreciates . . ."

The assertion that the trial judge did not make clear to the jury the issues of fact on which the decision of this case pivoted is not tenable. No charge can be judged by merely citing excerpts from it. The charge must be considered in its entirety. In the case of *Harman et ux. v. Chambers,* 358 Pa. 516, 57 A. 2d 842, 844, Mr. Justice JONES, speaking for this Court, said: "In scrutinizing a trial court's instructions to the jury for possible error, the charge must be read and considered, as a whole." This was a reiteration of what this Court has frequently stated.

The question as to the size of the verdict was not pressed before the court en banc, or here. As the court below said, "While the verdicts were large, the injuries in each of the four cases were very serious. . . . we see no reason to disturb these verdicts insofar as their amounts are concerned." This Court, likewise, finds no reason to disturb these verdicts.

The judgments are affirmed.