Blahnik and another, Appellants, v. Dax and another, Respondents.

*November 26—December 20, 1963.*

For the appellants there was a brief by *James P. Boex* and *Kaftan, Kaftan & Kaftan,* all of Green Bay, and oral argument by *J. Robert Kaftan.*

For the respondents there was a brief by *Everson, Whitney, O'Melia & Everson* of Green Bay, attorneys, and *George F. Miller* of Algoma of counsel, and oral argument by *John C. Whitney.*

WILKIE, J. The principal issue raised on this appeal is whether there is credible evidence to sustain the jury's apportionment of causal negligence, 60 percent as to the appellant and 40 percent as to the respondent.

Dax was traveling at a speed of 50 to 60 miles per hour as he approached the settlement. A jury could reasonably conclude that under the circumstances this speed created an unreasonable risk of harm, even though this speed was within the posted limits in this area. Dax had traveled this route many times prior to the day of the accident, en route to his place of employment in Green Bay from his home in Luxemburg. He knew that young children lived in this area and

more specifically, he knew that Barbara Blahnik lived in this vicinity, although he had never seen her along the road as he passed through Walhain. A jury could reasonably conclude that in the exercise of reasonable care Dax should have anticipated that young children might suddenly attempt to cross the highway in this settlement area, and adjusted his speed in the face of this reasonably predictable contingency.

At a distance of 69 feet from the Conard tavern, the building at the westernmost point of the settlement, Dax was traveling between 50 and 60 miles per hour, according to his own testimony. Given this speed at this point, assuming (as he testified) that he applied his brakes full force and immediately upon observing a child crossing the highway, he would have traveled a distance of about 243 feet before stopping.[1] The jury could conclude, therefore, that at this speed he could not adequately respond to the sudden movement of a child across the highway from the settlement area, and that he could not avert the collision.

However, a reasonable jury could also find that Barbara Blahnik was contributorily negligent with respect to lookout, and failure to yield the right-of-way. On the day of the accident, Barbara was delivering newspapers to the businesses and homes located in the settlement area. Immediately prior to the accident, she had delivered a paper to the Conard tavern. It was undisputed that, after stopping at the tavern, she intended to deliver a paper to the Cravillion home located on the south side of the highway. There were two versions as to her movements after she dropped off the paper at Conard's tavern.

According to her own testimony, and the testimony of the tavern owner, Conard, Barbara had parked her bike adjacent

---

[1] Wisconsin's Manual for Motorists (rev. ed. January, 1963)—Speed and stopping distance ratio chart. The court may take judicial notice of this information. *Mainz v. Lund* (1963), 18 Wis. (2d) 633, 119 N. W. (2d) 334.

to an elm tree located on the north side of the highway, 69 feet west of the west edge of the tavern and the east edge of the Cravillion driveway. Counsel for appellant argues that Barbara was traveling in an easterly direction on the north side of the highway, the same direction as Dax, for some distance before she attempted to cross the highway. Because Dax's view was unobscured for a distance of one-half mile west of the Cravillion driveway, counsel argues that Dax observed the girl moving in an easterly direction on the north side of the highway, west of the Cravillion driveway, and played a "guessing game" as to whether she would move across the highway in a southerly direction when she came abreast of the driveway. Counsel argues that the guessing game represents such clearly irresponsible conduct that the verdict in favor of the respondent is clearly against the weight of the evidence.

However, Dax offered another view of Barbara's pattern of movement across the highway. He testified that as he came abreast of the elm tree, Barbara rode her bicycle out from behind a car parked slightly to the north of the eastern-most highway post in a series of posts located 15 feet south of the Conard tavern and 10 feet north of the north edge of the concrete on Highway 54. These poles extended in an east-west direction for 20 feet, the westernmost post being six feet east of the west end of the tavern. Therefore, on the straight line east and west, Barbara would have first appeared 26 feet east of the east edge of the Cravillion driveway.

When he saw Barbara, Dax testified that he immediately applied his brakes and turned his car to the right so that his right wheels were on the south shoulder of Highway 54. There were tire marks on the south shoulder of the road east of the Cravillion driveway. The point of impact between his vehicle and the bicycle was 10 to 15 feet east of the east edge

of the Cravillion driveway, and one to two feet north of the south edge of the concrete.

Therefore, according to Dax, Barbara began her movement from behind a parked car 26 feet east of the east edge of the Cravillion driveway and 10 feet north of the north edge of the highway, and traveled at an angle across the 20-foot highway to a point one to two feet from the south edge of the highway and 10 to 15 feet from the east edge of the Cravillion driveway. Thus, Barbara traveled 35 feet while he traveled 79 to 83 feet. In view of Dax's testimony as to his speed, between 50 to 60 miles per hour, and the probable speed of a three-quarter-size bicycle driven by a 54-pound, eight-year-old girl, starting her movement on gravel, it is likely that Dax would have seen Barbara at a more-westerly point than 69 feet from the east edge of the Cravillion driveway. Yet, even assuming that he was 100 feet from the east edge of the Cravillion driveway when he saw Barbara, if he had applied his brakes immediately, he still would have struck the child at a point 15 feet east of the Cravillion driveway, had she followed the pattern of movement he described. At 50 miles per hour, the total stopping distance is 243 feet.[2] Assuming that Barbara was traveling approximately five miles per hour, and appellant's counsel concedes this is a reasonable assumption, and that Dax was de-accelerating after applying his brakes, Barbara could have traveled a distance of 35 feet while Dax traveled 115 to 120 feet and the vehicles could have intersected at a point 15 feet east of the east edge of the driveway. If Barbara followed the pattern of movement described by Dax, the physical facts are consistent with Dax's version of the accident.

Importantly, the testimony of Mr. and Mrs. Richard Cymela, eyewitnesses to the accident, supports Dax's version of Barbara's movements. The Cymelas were traveling west

---

[2] Wisconsin's Manual for Motorists (rev. ed. January, 1963), *supra.*

on Highway 54 in the opposite direction of Dax's movement. They testified that at a distance of about 900 feet east of the most-easterly highway post in front of the Conard tavern, they observed Barbara move out from behind a parked car a short distance north of the post, on a slight angle to the west, the front of the car facing in a northerly direction, the rear of the car facing in a southerly direction. They further testified that as they observed her as she moved across the highway from north to south, they simultaneously observed Dax braking his car and pulling to his right. They testified that they observed dust rising from his wheels at the moment Barbara appeared on the gravel north of the north edge of the highway. The Cymelas also placed the point of impact 15 feet east of the east edge of the Cravillion driveway.

From the testimony of the Cymelas and consistent with the physical facts, the jury could have reasonably concluded that Barbara emerged from behind a parked car at a distance of 10 feet north of the north edge of the highway and 26 feet east of the east edge of the Cravillion driveway, and that she moved across the highway into Dax's path so that even though he saw her the moment she became visible to east-bound traffic and immediately applied his brakes, he could not avoid a collision.

The jury could reasonably conclude that such pattern of movement was negligence with respect to lookout and failure to yield the right-of-way to vehicles approaching on the highway. They could reasonably have found negligence in these respects on the part of an eight-year-old girl who lived adjacent to the highway, had been instructed by her parents and in school as to the importance of lookout when crossing the highway on her bicycle, and had had considerable experience in crossing the highway on her bicycle [3] prior to the accident.

---

[3] *VanLydegraf v. Scholz* (1942), 240 Wis. 599, 4 N. W. (2d) 121.

We have held that the apportionment of negligence in a case where one of the parties is a young child is a matter especially within the decision-making province of the jury.[4]

We must conclude that in the instant case, the apportionment of negligence 60–40 in favor of Dax was within the range of reasonable determination.

Appellant contends that the trial court committed prejudicial error in its instruction relating to Barbara Blahnik's duty to yield the right-of-way, in that the court did not expressly direct the jury to consider her youthful age and limited experience when making its finding as to whether or not Barbara was guilty of this specific item of contributory negligence.

In determining the contributory negligence of a young child, the trier of fact is to expressly consider the age and limited experience of such a person. "The degree of care required of a child depends upon his age, capacity, discretion, knowledge, and experience. A child of tender years is not held to the same degree of care as an adult."[5]

In instructing the jury as to the meaning of contributory negligence on the part of Barbara Blahnik, the court instructed them that they were to consider her youthful age when determining whether she generally failed to exercise reasonable care for her own safety. The court further in-

---

[4] "Even when not confronted with the youth of one of the actors the issue of comparative negligence peculiarly lies within the province of the jury to determine. *Davis v. Skille* (1961), 12 Wis. (2d) 482, 489, 107 N. W. (2d) 458, and *Jankovich v. Arens* (1952), 262 Wis. 210, 214, 54 N. W. (2d) 909. However, where, as here, one of the actors is less than ten years old a court is particularly reluctant to interfere with the jury's attributing more negligence to the older actor." *Rossow v. Lathrop* (1963), 20 Wis. (2d) 658, 664, 123 N. W. (2d) 523.

[5] *Rossow v. Lathrop, supra,* at page 663. *Brice v. Milwaukee Automobile Ins. Co.* (1956), 272 Wis. 520, 76 N. W. (2d) 337.

structed the jury that Barbara Blahnik was not to be held to adult standards on making an evaluative judgment as to whether or not she was contributorily negligent.

The court said:

"In determining whether or not a child was exercising the care that one of his or her age, capacity, discretion, knowledge and experience would exercise under the same or similar circumstances, due consideration should be given to the child's instincts, for while a child may have the knowledge of an adult respecting dangerous acts, he or she may not have the prudence, discretion nor the thoughtfulness to avoid the hazards or risks to which they expose him or her. It is important that you keep in mind the difference between the tests to be applied by you in determining whether the motor vehicle operator, Edmund Dax, was negligent and in determining whether Barbara Blahnik was negligent."

In instructing the jurors as to the specific duty of lookout for her own safety, the court again directed the jury to consider her tender years. However, when instructing the jury as to the duty to yield the right-of-way to approaching traffic on the highway, he made no express reference to the conditioning factor of her youthful age. Appellant argues that the instruction misled the jury into believing that as to the duty of right-of-way, Barbara was to be treated as an adult.

The special verdict question on contributory negligence was submitted in the form of an ultimate fact conclusion:

"Just prior to the accident in question, was the plaintiff, Barbara Blahnik, negligent with respect to failing to exercise ordinary care for her own safety?"

The court expressly directed the jury that in making this general determination, they were at all times to consider Barbara's age and limited experience and were not to apply the same standards of care to her as they applied to Dax.

It is unreasonable to conclude that the jury believed that this general direction was to be disregarded when considering one possible constituent element of due care, right-of-way, simply because the court failed to repeat the age-consideration instruction, even though he did repeat such instruction in relation to another possible constituent element of negligence, lookout.

On the crucial question as to comparison of negligence, the court instructed:

"In answering this comparative negligence question, if you are to answer it, you should take into consideration that Edmund Dax was an adult and Barbara Blahnik was a child, and consider and weigh the credible evidence bearing upon the inquiries presented, in the light of the difference in the rules which you were previously instructed, to apply in determining whether the conduct of the parties was negligence."

The instructions made it clear that the jury was to make a general judgment as to Barbara's due care for her own safety, taking into consideration certain constituent elements of due care, and that in making this judgment and in making a comparison with the negligence of Dax, they were continually to take account of her youthful age. There was no error in the instructions.

During their deliberations, the jury sought instruction from the court as to the effect of the apportionment of negligence upon the jury award. The court properly refused to give such information. We have consistently held that, " '[i]t is reversible error for the trial court by instruction to the jury to inform the jury expressly or by necessary implication of the effect of an answer or answers to a question or questions of the special verdict upon the ultimate right of either party litigant to recover or upon the ultimate liability

of either party litigant.' " [6] To instruct the jury on the effect of its apportionment of negligence upon the ultimate recovery would be just such an error.

Our holding is based on the fundamental separation of the questions in the special verdict on the issues of liability from those of damages. If the trier is persuaded that a preponderance, however narrowly, favors a finding of negligence, he is then to award the full damages proved. The trier of fact is not to discount damages because of his view of the degree of fault in the defendant's conduct. Conversely, he is not to increase damages because the defendant's conduct was especially wanton and irresponsible. Neither is the trier of fact to temper his findings as to negligence by any consideration of the extent of the damages suffered.

*By the Court.*—Judgment affirmed.

---

[6] See *Pecor v. Home Indemnity Co.* (1940), 234 Wis. 407, 419, 291 N. W. 313, and cases cited therein.