518 A.2d 810

**Cynthia WHITE, a Minor by Her Parent and Natural Guardian Rebecca STEVENS and Rebecca Stevens in Her Own Right**

**v.**

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Philadelphia Electric Company, and City of Philadelphia.**

**Appeal of SEPTA.**

Superior Court of Pennsylvania.

Argued May 30, 1986.

Filed Oct. 28, 1986.

Reargument Denied Jan. 8, 1987.

124

Gary R. Battistoni and Alfred W. Putnam, Jr., Philadelphia, for appellant.

R. David Bradley, Philadelphia, for White, appellee.

Before WIEAND, BECK, and JOHNSON, JJ.

BECK, Judge:

Appellant Southeastern Pennsylvania Transportation Authority ("SEPTA") raises three issues on appeal.[1] We find none of them to have merit. We, therefore, affirm the judgment of the trial court.

On September 15, 1977, plaintiff-appellee Cynthia White, then twelve years old, was riding home from school on a SEPTA bus. She was on public transportation because of a

---

1. Miss White originally joined Philadelphia Electric Company (PECO) and the City of Philadelphia as co-defendants. The City and PECO settled prior to trial. SEPTA is the only appellant.

school bus drivers' strike. It was a hot afternoon, the air conditioning on the bus was not working and the windows were open. Miss White sat next to an open window toward the rear on the bus on the right hand side. She rested her arm on the open window track with her elbow protruding about one to three inches out of the bus.

As the bus progressed, a police car approached from the opposite direction with its lights and siren on. The bus swung to the right, possibly mounting the curb, and Miss White's elbow struck a utility pole as the bus passed by. She suffered permanent injuries as a result. She spent nine days in the hospital, underwent the insertion of two metal pins in her elbow, and required an additional nine months of convalescence before she was fully able to care for herself. She is permanently scarred due to tissue loss on her arm.

The jury awarded Miss White $243,000 in damages, but also found that she had been twenty percent (20%) negligent in extending her elbow out of the window of the bus. Therefore the trial court reduced the award by the amount of plaintiff's camparative negligence to $194,000. It also added Rule 238 delay damages of $87,133.81, resulting in a final molded verdict of $281,133.81. SEPTA timely filed a motion for a new trial which the trial court denied. This appeal followed.

The first issue on appeal is whether the trial court committed reversible error in charging the jury on two points. Specifically, SEPTA contends that Judge Kremer's instructions on loss of future earnings or earning capacity and on the Assured Clear Distance Rule (the "Rule") were erroneous. We will consider these two allegations of error in the charge seriatim.

Miss White was still a very young woman at the time of trial. She had the majority of her working life ahead of her. Certain occupations that Miss White had considered pursuing are foreclosed to her due to her injury. For example, she can no longer pursue her ambition of becoming a nurse's aide because the injury to her arm will prevent her from assisting patients who have difficulty walking.

At the time of trial, Miss White worked as a counter assistant at a vision center earning $3.75 per hour.

Because of Miss White's age at the time of her injury, the bulk of her claim for damages was based on lost earnings. SEPTA's allegation of error is that the trial court's instructions may have confused the jury as to how loss of future earnings damages are calculated. Specifically, SEPTA contends that the trial court did not sufficiently explain that a plaintiff's remaining post-injury earning capacity is to be deducted from the earnings she would have gleaned from those occupations she could have pursued absent the injury. *Gary v. Mankamyer*, 485 Pa. 525, 403 A.2d 87 (1979).

■ The law in this area is rather commensensical. If a plaintiff had the potential to earn a given amount without the injury and is now limited to a lower paying group of a possible jobs due to the injury, then a jury may award the plaintiff the difference between plaintiff's pre- and post-injury earning potentials. To use a hypothetical, if plaintiff had the potential to earn 5X before the accident but would be unable to earn more than 3X because of her injury, then a proper award would be 2X. *Id.; Williams v. Dulaney*, 331 Pa.Super. 373, 480 A.2d 1080 (1984).

Following a review of the trial court's charge, we conclude that the jury was adequately instructed as to loss of future earnings damages. As to this issue, the trial court began by stating that "[a] plaintiff is entitled to damages measured by the amounts to which her ability to earn money has been *reduced*. That is the degree to which her ability to earn money has been *reduced*." (N.T. 736) (emphasis added). The trial judge reiterated this point later in the charge, stating:

> In determining the degree of impairment of future earning capacity, and the amount of future loss, you must ascertain the *difference* between the yearly amounts which the plaintiff probably would have or could have earned during her work expectancy—not life expectancy—and the amounts which she probably would earn during that period of work expectancy. *You evaluate*

*that which will happen in the future, and that which
could have happen (sic) had she not been injured.*
(N.T. 741) (emphasis added). The above quoted passages
set forth the applicable law in a way that a lay person can
readily understand and are obviously correct statements of
the law.

■ SEPTA's true concern as to the charge on future
earnings damages appears to be that the charge on this
issue was so lengthy, as was the total charge, that these
two accurate statements of the law were likely lost in the
numerous other instructions the trial judge delivered as to
future earnings. As an appellate court reviewing the jury
charge, we must remain conscious that a trial judge is given
wide latitude when charging the jury. *Kopar v. Mamone,*
419 Pa. 601, 215 A.2d 641 (1966). The fact that a charge is
lengthy may only indicate that the judge is consciously
fulfilling his/her duty to clarify the instructions so that the
jurors are sure to understand the questions they are to
decide. *Wood v. Smith,* 343 Pa.Super. 547, 495 A.2d 601
(1985). We certainly cannot reverse merely because the
trial court restated a point several times or because the jury
might have been selectively inattentive to the charge.

■ In this case, the fact that the charge was lengthy
does not supplant the accuracy thereof. There is no indica-
tion that the jury was confused as to the future earnings
damages; they asked no questions nor did they ask to have
any portion of the charge explained or repeated. The trial
court did not err by providing a detailed charge on a
complex topic.

SEPTA's second allegation of error in the charge is that
the trial court erred by including any reference to the
Assured Clear Distance Rule. As SEPTA frames the issue,
"[t]he trial court also committed clear and reversible error
in charging the jury on the assured clear distance rule,
which was absolutely inapplicable to this case." We dis-
agree.

■ The Assured Clear Distance Rule is a fancy label for what is probably just a principle of safe driving, i.e. that no person should drive a vehicle at a speed greater than that which will allow the driver to stop within the distance ahead that he can clearly see. *See Unangst v. Whitehouse*, 235 Pa.Super. 458, 344 A.2d 695 (1975). The Rule has been codified at 75 Pa.Cons.Stat.Ann. § 3361 (1976) and states as follows:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, or at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when travelling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

The Rule usually comes into play where a vehicle collides with an obstacle in the vehicle's path. SEPTA is correct in stating that the Rule does not apply in a case where the object in the assured clear distance of the vehicle is an oncoming vehicle. Thus, the Rule does not require that the driver of a vehicle drive at whatever speed would be required to avoid colliding with an oncoming vehicle approaching in the driver's own path of travel. *Mickey v. Ayers*, 336 Pa.Super. 512, 518, 485 A.2d 1199, 1203 (1984); *Turner v. Smith*, 237 Pa.Super. 161, 165–9, 346 A.2d 806, 809–10 (1975).

Given this limited applicability of the Rule, we agree that it appears not to have been directly implicated in this case. Since the Rule does not apply to oncoming vehicles, it was not implicated by the emergency vehicle that was approaching the bus. In this case, the only other possible basis for involving the Rule is the bus driver's contention that there

was a saw horse type barricade extending into the road which took up some of the width of the road. The driver testified that the fact that this barricade was in the road was one reason he had to swerve the bus so radically toward the curb to avoid hitting the oncoming emergency vehicle. (N.T. 506–08). However, this barricade was in the westbound lane of the road and the bus was then in the eastbound lane. (N.T. 506). Therefore, the barricade was not in the "assured clear distance" of the bus.

SEPTA argues that from the foregoing, we must conclude that the trial judge's instruction on the Rule was reversible error because the jury could have based its verdict on that erroneous instruction. We do not agree. Our courts have frequently reiterated the maxim that in reviewing allegedly incorrect jury instructions, an appellate court must read the charge in its entire context. *James v. Ferguson,* 401 Pa. 92, 97, 162 A.2d 690–3 (1960); *Harman et ux. v. Chambers,* 358 Pa. 516, 519, 57 A.2d 842, 844 (1948). This maxim is particularly important in a case such as this, where the trial court did indeed mention in its charge a rule of law that appears not to have been directly applicable to the case before it. In such a case, we must read the unnecessary instruction in its context to ascertain whether its inclusion constituted error sufficiently harmful to warrant reversal. We cannot reverse on the basis of isolated inaccuracies. *Naccarati v. Garrett,* 351 Pa.Super. 437, 506 A.2d 428 (1986); *Levin v. Sears, Roebuck and Company,* 218 Pa.Super. 304, 280 A.2d 822 (1971) (one erroneous sentence in charge does not warrant new trial if in context of whole charge it does not constitute fundamental and prejudicial error). We conclude that in the present case, given the context in which the instruction on the Rule was given, the error was harmless.

The trial judge did not expressly charge the jury that the Rule was implicated in this case by either the oncoming emergency vehicle or the barricade in the road. Rather, Judge Kremer delivered the charge on the Rule only as one brief portion of his lengthy charge regarding the negligence

of SEPTA and whether the SEPTA driver acted in accordance with the applicable standard of care under the totality of the circumstances of this case. (N.T. 692–95). Earlier in the charge, the trial judge had carefully instructed the jury to decide between the conflicting testimony as to whether there was indeed any barricade in the road and, therefore, whether the driver had to pull the bus over as far as he did. (N.T. 664–5). The trial judge made no mention of the Rule at that point in the charge. Somewhat later, the court instructed the jury as to the vigilance required of any driver and the particularly high level of care required of a common carrier. The court stated:

> You may find that vigilance, such vigilance encompasses a constant viewing of what is ahead, and what is going on as all these things are unraveling and unfolding. If you find that the SEPTA driver was not properly observing, looking, operating his bus, then you may consider whether or not, to you, that is an absence of the exercise of ordinary care, and was negligence.
>
> It is for you to decide whether there was a barricade or an obstacle in the road, and if so, whether the SEPTA driver anticipated or should have anticipated that it be pulled to the right ... It is for you to determine whether the SEPTA driver acted with due care under all those circumstances.

(N.T. 692).

It was only then that the trial judge specifically addressed the Rule as follows:

> It is for your to decide what the bus did. It is for your [sic] remember all of the measurements. You may consider that under the law the operator of a motor vehicle, automobile or bus, had the duty to look where he is going, and while he is looking he must have his vehicle under such control that he can stop within the assured clear distance ahead. You always must have your vehicle under such control so that you can come to a stop within the—within what we call the assured clear distance

ahead—the distance that you can reasonably see you must then be able to stop.

In this case it is my recollection that the testimony was that the roadway, at this point where the accident occurred, was straight ahead; so that you could see ahead of you, and that is up to you to recall the testimony.

If you were to find that the driver of the SEPTA bus was not in such control that he could properly stop within the assured clear distance ahead, you could consider that as evidence of negligence. And then you would have to decide whether that was a substantial factor, or one of the substantial factors in causing the accident. You do not have to prove one piece of negligence, you could prove two pieces of negligence. The question is whether one, two, three, four, five became what we call a substantial factor in causing the accident.

(N.T. 694-5).

■ Having thus analyzed the charge on the Rule in its entire context, it is clear that the trial judge did not submit the Rule as a principle of law or statute which alone would establish the standard of care against which the driver's conduct should be measured. Rather, the Rule was discussed only as one possible element of the applicable standard, one expression of the general requirement of vigilance by a driver. Since the central question in this case regarding the driver's conduct was whether it was negligent for him to swerve the bus to the right to avoid the emergency vehicle, we do not see how the jury could have based its verdict solely on the Assured Clear Distance Rule. The trial judge adequately explained that the Rule is basically one concerned with speed and ability to stop. Here, the fundamental question was not whether the driver could stop but rather whether he reacted to the situation before him in a prudent manner. In other words, under all of the circumstances, was he operating his vehicle sufficiently carefully and did he prudently appraise the situation around him when he swerved to the right, thus bringing Miss White's arm into contact with the pole? The fact that in the context

of a detailed charge on the applicable standard of care, the trial judge reminded the jurors of one fundamental rule of safe driving not precisely applicable to the case before it does not constitute reversible error.

■ SEPTA next complains that the verdict was so excessive that the trial court committed error by refusing to grant SEPTA's motion for remittitur or a new trial. A verdict is so excessive as to merit a new trial when it shocks the court's sense of justice. *Lokay v. Lehigh Valley Co-op Farmers, Inc.*, 342 Pa.Super. 89, 492 A.2d 405 (1985). The jury verdict in the instant case was $243,000. In arriving at the verdict, the jury must at least have considered plaintiff's expert witness' testimony that plaintiff had suffered a loss of future earning potential equal to between $162,000 and $337,000. The jury was also properly instructed to consider past and future pain and suffering, including embarrassment and humiliation, scarring and disfigurement, and loss of enjoyment of the pleasures of life. (N.T. 731).

■ Considering all of the factors which the jury could have and probably did weigh in reaching their verdict, it is not at all unreasonable that they arrived at the amount that they did. The verdict does not shock our sense of justice, especially in light of the fact that the total verdict did not even come close to the upper limit set by plaintiff's expert for lost future earnings alone. The trial court did not err in denying SEPTA's motions.

Finally, SEPTA argues that it was entitled to judgment as a matter of law because Miss White's act of resting her arm on the window track allegedly constituted contributory negligence per se and, in SEPTA's words, this act "was the only 'substantial factor' in causing her injury." Brief for Appellant at p. 26. Therefore, SEPTA contends that the trial judge should have removed from the jury both the determination of Miss White's negligence and the apportionment of negligence required by our comparative negligence statute. SEPTA argues the trial judge should have held as a matter of law that Miss White's negligence was at least fifty-one percent (51%) causal and that her recovery, therefore, was barred. We disagree. Miss White's conduct was

not negligent per se. Moreover, the trial judge was correct in submitting both that and the causation issue to the fact-finder.

"Negligence per se" has been defined as:

Conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances, either because it is in violation of a statute or valid municipal ordinance, or because it is so palpably opposed to the dictates of common prudence that it can be said without hesitation or doubt that no careful person would have been guilty of it.

Black's Law Dictionary, p. 933 (5th ed. 1979). *See also* Restatement (Second) of Torts §§ 285–6 (1965).

The term is most commonly used to refer to the first type of conduct referred to in the foregoing definition, that is, conduct violative of a statute or similar enactment. *Prosser v. Keeton on Torts* 220 (W.P. Keeton ed., 5th ed. 1984); *Jinks v. Currie*, 324 Pa. 532, 188 A. 356 (1936); *Landis v. Conestoga Transportation Company*, 349 Pa. 97, 36 A.2d 465 (1944). Obviously in this case there is no claim that Miss White violated any statute. Thus, SEPTA is referring to negligence per se in the sense of conduct that the court must hold, as a matter of law, to have been outside the dictates of ordinary care.

SEPTA primarily relies on *The Pittsburgh and Connellsville Railroad Company v. McClurg*, 56 Pa. 294 (1867), to support its argument that Miss White's conduct was negligent per se. In *McClurg*, the plaintiff had rested his elbow on the window sill of an open window on defendant's railroad car. His elbow was injured when that car collided with another of defendant's cars standing on a switch on defendant's road. *Id.*, 56 Pa. at 295. The court held that plaintiff was contributorily negligent as a matter of law or, in the court's terms, negligent "in se", and his recovery, therefore, barred. *Id.*, 56 Pa. at 300. The *McClurg* court opined

that where a traveler puts his elbow or arm out of a car window, voluntarily, without any qualifying circumstanc-

es impelling him to it, it must be regarded as negligence *in se;* and when that is the state of the evidence it is the duty of the court to declare the act negligence in law. *Id.*

SEPTA apparently finds *McClurg* to be precisely analogous to the case before us. We do not. *McClurg* did not involve a child plaintiff, whereas Miss White was twelve at the time of this accident. Assuming that under *McClurg* a Pennsylvania court would find today that an adult who rests her arm on a car window is negligent as a matter of law, the court could not automatically reach the same conclusion in a case involving a child plaintiff.

The law of Pennsylvania has long recognized that the standard of care to be applied to children accused either of negligence as a defendant or contributory negligence differs from that to be applied to adults. In *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957), the Supreme Court of Pennsylvania explained the distinction as follows:

> Even though the standard of care applicable to a minor differs from that applicable to an adult, nevertheless a minor may be guilty of actionable negligence. Both an adult and a minor are under an obligation to exercise reasonable care; however, the 'reasonable care' required of a minor is measured by a different yardstick—it is that measure of care which other minors of like age, experience, capacity and development would ordinarily exercise under similar circumstances. In applying that yardstick, we place minors in three categories based on their ages: minors under the age of negligence; minors over the age of fourteen years are presumptively capable of negligence, the burden being placed on such minors to prove their incapacity; minors between the ages of seven and fourteen years are presumed incapable of negligence, but such presumption is rebuttable and grows weaker with each year until the fourteenth year is reached.

*Id.,* 390 Pa. at 339–40, 135 A.2d at 401. *See also Dunn v. Teti,* 280 Pa.Super. 399, 421 A.2d 782 (1980) (allocatur denied).

■ The trial court in this case charged the jury at length regarding the different standard of care to be applied in judging a child's conduct. (N.T. 657, 660–1, 673, 683, 697–8, 700). The court, therefore, properly focused the jury's attention on the crucial factual distinction between this case and *McClurg*—the plaintiff's age. Since it is hornbook law that it is for the fact-finder to determine the particular standard of care to be applied under the circumstances of a particular case, *Prosser and Keeton on Torts* at 236, it was entirely proper for the trial court to submit the issue of Miss White's contributory negligence to the jury. In fact, in *Kuhns v. Brugger, supra,* the court expressly stated that a question concerning the capability for negligent conduct of a child between the ages of seven and fourteen is for determination by the jury, since such questions involve the determination of judgment factors which are often closely associated with questions of fact. Thus, they are hardly ever for resolution by the court. *Kuhns,* 390 Pa. at 341–2, 135 A.2d at 401–02. *See also East Texas Motor Freight, Diamond Division v. Lloyd,* 335 Pa.Super. 464, 484 A.2d 797 (1984) (existence of negligence is usually question for the jury and can be removed from jury only when facts leave no room for doubt).

■ It was also correct for the trial court to leave the apportionment of the causal negligence to the jury. Under our comparative negligence statute, the contributory negligence of the plaintiff does not bar her recovery unless it was greater than the causal negligence of the defendant. Where the plaintiff's negligence was equal to or less than the defendant's causal negligence, the plaintiff's recovery is diminished in proportion to the negligence attributed to the plaintiff. 42 Pa.Cons.Stat.Ann. § 7102(a) (1978). We have previously stated that the totality of the causal negligence is a matter properly determined by the jury. It is only in the rare case that a court should hold as a matter of law that the negligence of one party is equal to or greater than that of another. *Peair v. Home Association of Enola Legion 751,* 287 Pa.Super. 400, 408, 430 A.2d 665, 669 (1981) (allocatur denied) (citing *Cirillo v. Milwaukee,* 34 Wis.2d

705, 150 N.W.2d 460 (1967)[2]). Thus, an appellate court should be very reluctant to overturn the jury's apportionment of negligence. *Hollie v. Gilbertson*, 38 Wis.2d 245, 250, 156 N.W.2d 462, 465 (1968); *Marcus v. Cortese*, 98 N.M. 414, 649 P.2d 482 (1982). In fact, the Supreme Court of Wisconsin has stated that it is particularly reluctant to interfere with the jury's function in a case where the negligence of a child is being compared to that of an adult. *Cirillo v. Milwaukee, supra, cited with approval in, Peiar, supra.*[3]

We find nothing in the record of this case that suggests that the trial judge should have usurped the jury's function and held as a matter of law that Miss White's conduct was the only substantial factor in causing her injury. Nor do we find anything to suggest that the jury's allocation of negligence was unreasonable disproportionate. The jury did allocate twenty percent (20%) of the negligence to Miss White, thus evidencing their careful consideration of her conduct. Moreover, there was ample evidence to support the jury's conclusion that the SEPTA driver had not acted with due care and that the sharp swerving of the bus toward or over the curb had been a substantial factor in causing Miss White's injury.

Even if this was a case involving a plaintiff who was negligent per se, and the existence of negligence had properly been determined by the court as a matter of law, the allocation of negligence between plaintiff and defendant

2. The Wisconsin "contributory" negligence statute is in all relevant respects the same as the Pennsylvania comparative negligence statute. Wis.Stat.Ann. § 895.045 (1983). This court has previously found persuasive the interpretation placed by the Wisconsin courts on such a statute. *Pachesky v. Getz*, 353 Pa.Super. 505, 510 A.2d 776 (1986).

3. Interestingly, the Supreme Court of Wisconsin has also opined that in a case involving a child plaintiff accused of contributory negligence, the jury should consider the age of the plaintiff twice; first, in determining if the plaintiff was negligent at all and second, in comparing the plaintiff's negligence to that of the defendant. *Blahnik v. Dax*, 22 Wis.2d 67, 125 N.W.2d 364 (1963). Other courts, perhaps representing the present majority, consider the child's age only once, as to whether there was negligence at all. *See, e.g., Anderson v. Happ*, 136 Ga.App. 839, 222 S.E.2d 607 (1975).

would still be ` for the jury. As the Georgia'·· Court of Appeals has aptly stated:

> While an act defined by the law as negligence per se is not issuable, in the sense that no issue may be made as to the act being or not being negligence, yet is still within the exclusive province of the jury to determine whether one shown to have been guilty of negligence per se, was guilty of greater negligence than another shown to have been guilty of some other kind of negligence per se or merely of negligence as a matter of fact and to compare the two and determine which is greater.

*Jones v. Secress,* 106 Ga.App. 96, 98, 126 S.E.2d 296, 298 (1962); *Accord Renz v. Penn Central Corporation,* 87 N.J. 437, 435 A.2d 540 (1981); *Eden v. Consolidated Rail Corporation,* 87 N.J. 467, 435 A.2d 556 (1981). To hold otherwise would be to carve out one group of cases, those involving negligent per se plaintiffs, and as to them alone reinstate contributory negligence as an automatic bar to recovery. This would be clearly inconsistent with the intent of the legislature as expressed in our comparative negligence statute.

The judgment of the trial court is affirmed.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting:

I agree with the majority that the trial court committed error when it instructed the jury that it could find SEPTA negligent if SEPTA's driver failed to have the bus under such control that he could bring the bus to a stop within the assured clear distance ahead. This rule, which the trial court defined for the jury, has application to static or essentially static objects appearing within the assured clear distance on the roadway in front of the driver of a vehicle. The rule has no application to the rapid, perhaps erratic, approach of a vehicle moving in the opposite direction. *Mickey v. Ayers,* 336 Pa.Super. 512, 518, 485 A.2d 1199, 1203 (1984); *Adams v. Mackleer,* 239 Pa.Super. 244, 250, 361 A.2d 439, 442 (1976); *Turner v. Smith,* 237 Pa.Super. 161, 165–169, 346 A.2d 806, 808–809 (1975).

However, I am unable to agree with the majority that this error was harmless. The trial court's jury instructions expressly permitted the jury to find SEPTA negligent for violating a principle of law which, as the majority concedes, had no application to the facts. This was fundamental error. "In determining whether fundamentally erroneous instructions require the grant of a new trial, whether such instructions did or did not bring about the complained of verdict is not the question. If it appears that such instructions *might* have been responsible for the verdict, a new trial is mandatory." *Jones v. Montefiore Hospital*, 494 Pa. 410, 420, 431 A.2d 920, 925 (1981) (emphasis in original) (citation omitted), quoting *Vaughn v. Philadelphia Transportation Co.*, 417 Pa. 464, 468, 209 A.2d 279, 282 (1965). See also: *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 382, 492 A.2d 1382, 1386 (1985) ("If the jury charge is fundamentally erroneous or has a tendency to mislead or confuse rather than to clarify the issues, a new trial will be required so long as that portion of the charge in question might have been responsible for the verdict.").

Since the jury might have reached its verdict as a result of the erroneous instruction regarding the "assured clear distance ahead" rule, I would reverse and remand for a new trial.