257 Pa. Superior Ct. 348 (1978)
390 A.2d 1271
Abraham M. SCHNEIDER, Isabelle B. Schneider, Appellees,
v.
ALBERT EINSTEIN MEDICAL CENTER, NORTHERN DIVISION, Murray Seitchik, M.D., and Bernard Goldstein, M.D., Appellants at Nos. 1516, 1532, 1557,
and
Jacqueline Duval, M.D. and Robert Moskal, M.D.
Superior Court of Pennsylvania.
Argued December 13, 1977.
Decided July 12, 1978.
*353 Edward L. Edelstein, Philadelphia, for appellant at No. 1516, and appellee, Goldstein, M.D., at Nos. 1532 and 1557.
Jan E. DuBois, Philadelphia, with him Harry A. Short, Jr., Philadelphia, for appellant at No. 1532, and appellee, Seitchik, M.D., at Nos. 1516 and 1557.
James Lewis Griffith, Philadelphia, for appellant at No. 1557, and appellee, Einstein Medical Center, at Nos. 1516 and 1532.
James E. Beasley, Philadelphia, with him Jeffrey M. Stopford, Philadelphia, for appellees, Schneider.
No appearance entered nor brief submitted for appellees, Moskal, M.D., and Duval, M.D.
Before WATKINS, President Judge and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.
*354 VAN der VOORT, Judge:
The instant action in trespass was initiated by plaintiffs-appellees, Abraham M. Schneider and Isabelle Schneider, against defendants-appellants, Albert Einstein Medical Center, Northern Division, Dr. Murray Seitchik and Dr. Bernard Goldstein, and four other defendants, to recover damages for severe personal injuries including brain damage sustained by Mrs. Schneider during the course of preoperative administration of anesthesia on May 21, 1969. Dr. Seitchik was the plastic surgeon who was to have performed surgery on Mrs. Schneider, for surgical removal of an obstructed gland, on that date. Anesthesia prior to the surgery was initially administered by Dr. Duval, a staff anesthesiologist, and Dr. Renee Calamba, a resident in anesthesiology, who was not named as a defendant. Thereafter, Dr. Goldstein, Director of the Division of Anesthesiology at the Hospital, was called to the operating room to render assistance in connection with the anesthetization of Mrs. Schneider.
Trial commenced before the Honorable Stanley M. Greenberg and a jury on May 17, 1976. On June 9, 1976, the jury, in response to special interrogatories, returned a verdict in the total amount of $1,500,000 against the defendants  $1,000,000 for plaintiff, Abraham M. Schneider, and $500,000 for plaintiff, Isabelle Schneider. The jury found that Drs. Seitchik, Goldstein and Duval were negligent, that Dr. Calamba was not negligent, that Dr. Duval, with regard to the acts and omissions found to be negligent, was subject to the direction and control of the Hospital, Dr. Goldstein and Dr. Seitchik, and that Dr. Goldstein, with regard to the acts and omissions found to be negligent, was subject to the direction and control of the Hospital and Dr. Seitchik. Post-trial motions for judgment n.o.v. and, alternatively for a new trial were filed by the Hospital and Drs. Goldstein and Seitchik. Dr. Duval filed neither post-trial motions nor an appeal to our Court.
In the present contexts, where the appellants seek review after denial of motions for new trial or judgment n.o.v., we must examine the evidence in a light most favorable *355 to the verdict winner; we consider the evidence which supports the verdict, resolving conflicts in testimony in favor of the appellee verdict winner. Rutter v. Morris, 212 Pa.Super. 466, 243 A.2d 140 (1968). In the instant case our factual review is not difficult, since there is no significant disagreement about the facts, but rather a difference between the parties as to the legal implications to be drawn from those facts.
The evidence shows that Mrs. Schneider was admitted to the Hospital on May 19, 1969, for elective surgery upon the submaxillary gland. Dr. Seitchik was her surgeon. The nature of intended surgical procedure was such that "endotracheal intubation" was to be used to anesthetize Mrs. Schneider. This process involves the placement of a tube in the trachea to transmit anesthetic and oxygen directly to the lungs from the anesthesia machine. The first step in the anesthesia process, "induction" was accomplished by the administration of a drug which paralyzed the patient so as to make her unable to breathe on her own.
Induction began at 1:47 P.M., with Dr. Duval and Dr. Calamba, a resident physician in anesthesiology employed by the Hospital, in attendance. Dr. Seitchik was immediately outside the operating room scrubbing at a sink, and by taking one or two steps could see into the operating room. Dr. Calamba attempted to intubate Mrs. Schneider, was unsuccessful, the tube was removed, and the patient reoxygenated. Dr. Calamba, made a second attempt and was again unsuccessful. Dr. Duval, who had been supervising the first two attempts, made the third attempt to intubate the patient herself, and she was similarly unsuccessful. Dr. Duval made a fourth attempt at intubation, and after this attempt the endotracheal tube was left in the patient's throat with anesthesia gases being administered. The fourth intubation attempt was completed about 20 minutes after induction. Approximately 10 minutes after the fourth intubation, Mrs. Schneider suffered a cardiac arrest due to lack of oxygen.
*356 Dr. Seitchik, having completed his scrub, entered the operating room as Dr. Duval was placing the endotracheal tube during the third attempt. He had seen the first attempt by Dr. Calamba, apparently had not observed the second attempt, but observed all further actions from the time of the third attempt until the cardiac arrest.[1]
Approximately 5 minutes after the fourth and last intubation, Dr. Seitchik noticed something about the patient's condition which disturbed him. He discontinued his operative preparations, and asked Dr. Duval if everything was satisfactory; he could not recall her answer. Shortly thereafter, someone announced that Mrs. Schneider was "cyanotic", (meaning that her skin color, due to lack of oxygen, had turned blue.) According to Dr. Seitchik's recollection, Dr. Goldstein soon entered the room and, together with Dr. Duval and Dr. Calamba, worked on the patient. During this period when Dr. Goldstein was in the room, estimated by all physicians to be approximately 5 minutes, Dr. Seitchik did nothing. Indeed, Dr. Seitchik had walked away from his patient before the cardiac arrest occurred.
During this period, Dr. Goldstein, apparently alerted by hearing a physician's request for a drug used in emergency situations (aminophylline), came into the operating room for the first time. This was approximately 5 minutes after the fourth intubation and approximately 5 minutes before the cardiac arrest. During the 5 minute period that Dr. Goldstein attended the patient, he listened for breath sounds (and was not satisfied), checked the blood pressure on two occasions (and found it dropping), checked the pulse (it was inadequate), squeezed the anesthetic bag (it was like "pressing against a brick wall"), inflated the bag by pushing on the stomach, observed Dr. Duval's difficulties in inflating the lungs by use of the bag, and apparently had discussions with Dr. Duval.
*357 As Dr. Goldstein, now some 5 minutes after his arrival, was preparing to check the placement of endotracheal tube, the patient's heart stopped. Dr. Goldstein immediately removed the endotracheal tube, Dr. Seitchik immediately began external heart massage, and within 10 to 15 seconds the patient's skin color and heart beat returned to normal. However, permanent brain damage, from lack of oxygen, had already occurred.
According to plaintiffs' expert testimony, the patient was unable to get oxygen in her lungs because the endotracheal tube had been placed in the esophagus (passageway to stomach) or had "kinked" within the trachea; in either event, a mechanical obstruction would prevent passage of oxygen to the lungs. The expert opined that both Dr. Goldstein and Dr. Duval were negligent for having failed to diagnose the mechanical blockage of the trachea before the lack of oxygen caused "intractable hypoxia" and consequent brain damage. As to Dr. Goldstein, plaintiffs' testimony indicated that reasonable medical care required Dr. Goldstein to make an immediate determination whether the trachea was blocked to air passage, and having determined that to be the case (as plaintiffs' testimony indicated it was), he should have removed the endotracheal tube within 15 seconds of his arrival. As to Dr. Seitchik, plaintiffs' expert testimony was that Dr. Seitchik, as the surgeon, had the right to order immediate termination of the operation (including removal of the endotracheal tube), and that his failure to do so, in light of the observations he could and should have made, was negligence.
There was also evidence presented with respect to the issue of agency as the plaintiffs alleged that Dr. Goldstein was responsible for negligence of Dr. Duval and the Hospital and Dr. Seitchik responsible for negligence of Drs. Goldstein and Duval. Such agency issues were predicated upon a respondeat superior theory. Thus, the evidence showed that Dr. Goldstein was head of the Hospital's anesthesiology department, for which the Hospital paid him $7,000. per year in addition to his salary from the Hospital as an anesthesiologist. *358 Anesthesiology services were billed in his name ("Bernard Goldstein, M.D. & Associates"), but the Hospital controlled the actual receipts. As department head, Dr. Goldstein had the administrative duties of assigning operating rooms and anesthesiologists and of making recommendations concerning the hiring of anesthesiologists and staff and the purchase of anesthetic supplies; the Hospital retained the right to approve or reject Dr. Goldstein's recommendations. Dr. Goldstein testified that, as department head, he had the right to direct staff anesthesiologists to follow correct methods of administering anesthesia, and in memoranda prepared by him when he was hired as department head he asserted that it was his duty to assure that "safe and adequate practice is being carried out at all times" and that he was responsible "for the quality of the professional services rendered."
Of course, the defendants-appellants offered testimony and introduced other evidence in an attempt to convince the jury that there was an absence of negligence and a lack of such control as is necessary to establish liability based upon an agency theory. The jury however, chose to rely upon the plaintiffs-appellees' proof in reaching the verdict. Each appellant raises numerous questions on appeal.

APPEAL OF ALBERT EINSTEIN MEDICAL CENTER, NORTHERN DIVISION
On this appeal, the Albert Einstein Medical Center (herein referred to as the "Hospital") raises eleven issues, some of which contain several allegations of error. The appellees maintain that the Hospital waived its appeal rights by, in effect, abandoning its post-trial motions. The lower court reached that conclusion and denied the Hospital's post-trial motions for lack of prosecution.
The record shows that the Hospital filed timely post-trial motions after the jury's verdict, but took no further actions on them. In their brief on appeal, the appellees note that the Hospital neither filed a brief nor participated in oral argument before the lower court on those motions. This is *359 not contested by the Hospital, which filed a reply brief to our Court, subsequent to the filing of appellees' brief, and addressed particularly to the waiver issue.
Based upon all that has occurred, we deem the Hospital to have waived its rights to appeal. The Court of Common Pleas of Philadelphia County has adopted Rule 240[2] dealing with procedural requirements for post trial motions. Inter alia, the Rule provides:
(E) The Post-Trial Motion Clerk shall notify all counsel of the availability of the transcribed notes. Counsel for the moving party shall file his brief with the Post-Trial Motion Clerk within thirty (30) days of said notice, certifying the date he served copies of his brief on all counsel of record. . . .
Should the moving party fail to file his brief within the said thirty (30) days (unless an extension is allowed by the Court), the motion shall be dismissed with prejudice. (Emphasis supplied)
As noted above, the appellant Hospital neither filed a brief nor participated in any argument on the pre-trial motions. The failure to submit a brief was clearly in contravention of the local court rule, which provides for dismissal of the post-trial motions with prejudice in such circumstances. In Straff v. Nationwide Mutual Fire Insurance Company, 230 Pa.Super. 403, 326 A.2d 586 (1974), our Court was faced with a highly analogous circumstance, where appellants failed to comply with applicable local rules concerning post-trial motions. In noting that such procedural rules are absolutely essential to the orderly administration of justice and the smooth and efficient operation of the judicial process, we determined that the lower court was correct in quashing the appellants' post-trial motions. In the instant case, we cannot countenance the Hospital's complete avoidance of procedural requirements, which operated to deprive the lower court of any meaningful opportunity to assess the merits of post-trial motions. See Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 255, 322 A.2d 114 (1974). We therefore deem *360 the Hospital to have failed to properly preserve the issues raised in its appeal.

APPEAL OF DR. SEITCHIK
Dr. Seitchik raises several claims of error in contending that he was entitled to judgment n.o.v. or a new trial. With regard to the former he asserts first that there was not sufficient evidence to establish that any of his own conduct was the proximate cause of Mrs. Schneider's injury. Our review of the record leads us to disagree. As noted earlier, we must review the evidence in a light most favorable to the verdict winner. At trial, an expert witness called by plaintiffs testified that Dr. Seitchik, as the operating surgeon, could have and should have given orders to cancel the anesthesia attempts when it was apparent that the progress of these procedures was not satisfactory. It is abundantly clear that the wife plaintiff's brain injuries resulted from an excessive period of time passing when her body was without a necessary supply of oxygen. Thus, we believe there was sufficient evidence to find Dr. Seitchik's conduct to have been a proximate cause of the injuries.
The second argument of Dr. Seitchik in support of his judgment n.o.v. contentions was that there was insufficient evidence to support a finding that he was liable, on an agency theory, for acts of negligence by the anesthesiologists. While analysis of this issue may be unnecessary in view of the jury's finding that this appellant was personally negligent, as discussed above, even a cursory review would lead to the conclusion that the contention has no merit. In his brief to this Court, appellant Seitchik concedes that the testimony ". . . indicated that the surgeon has an obligation to monitor his patient regardless of what the anesthesiologist is doing and that he has the right to cancel the procedure at any time." In McConnell v. Williams, 361 Pa. 355, 65 A.2d 243 (1949), our Supreme Court promulgated the so-called "captain of the ship doctrine", which essentially holds that a surgeon may be liable for all negligence occurring to cause harm to his patient in the operating room in *361 which the surgeon is the person of highest authority. In whatever ways this doctrine may have been or amended over the years, all parties agree that the basic "right of control" test, used for guidance in any case where agency is in issue, could and should be applied in this case. We agree. The governing standard in the test is ". . . the right of controlling the manner of . . . performance of the work," regardless of whether that control is actually exercised. Rockwell v. Kaplan, 404 Pa. 574, 579, 173 A.2d 54, 56 (1961). The evidence obviously supports the jury's finding that Dr. Seitchik was responsible for the negligence of the anesthesiologists, for he had the authority to cancel and thereby control their procedures at any time.
Next, Appellant Seitchik argues, on several grounds, that he should have been granted a new trial. He first contends that the lower court failed to properly charge the jury that the element of control was an essential ingredient to the imposition of liability under the "captain of the ship" doctrine. Even if this contention had merit, the appellant would gain no relief in view of the jury's finding that he was personally negligent in causing the plaintiff's injuries. Nevertheless, our review leads us to conclude that there is no merit to the appellant's argument. The charge of the lower court had several explanations of the law with respect to control. After hearing the charge, the jurors answered in the affirmative to the special interrogatory asking whether the anesthesiologists were subject to the control of Dr. Seitchik. We perceive no error.
The appellant Seitchik next maintains that: "The lower court erred in charging the jury that proximate cause could be established by evidence that defendants' conduct increased the risk of injury." The appellees contend that this point was not included in appellant's post-trial motions. We must agree. Our review of Seitchik's Motion for New Trial and Brief in Support of Motion for New Trial reveal no specific reference to this claim of error in the court's charge to the jury. In such circumstances, we hold the issue to have been waived for purposes of appeal. Dilliplaine v. *362 Lehigh Valley Trust Company, 457 Pa. 255, 322 A.2d 114 (1974).
A similar conclusion is reached with respect to appellant Seitchik's contention that the lower court erred in failing to strike the testimony of an employment expert, Dr. Leshner, who testified for plaintiffs. In his brief to this Court, appellant Seitchik notes that pursuant to Pennsylvania Rule of Appellate Procedure 2137[3], he would adopt the argument advanced by his co-appellant, Albert Einstein Medical Center, with respect to the testimony of Dr. Leshner. Our review of the Hospital brief discloses no argument concerning such testimony. Moreover, we cannot discover any objection or motion to strike by appellant Seitchik directed to the testimony of Leshner at trial. In all of these circumstances, we must hold the challenge to Leshner's testimony to have been waived.
Appellant Seitchik argues on appeal that the lower court erred ". . . in failing to clarify the proper elements of damages which plaintiffs could recover in its charge to the jury." This contention was not included in Seitchik's motion for new trial and has not been properly preserved for purposes of appellate review. Dilliplaine v. Lehigh Valley Trust Company, supra. The same conclusion is also applicable to the claims by Seitchik that the lower court erred in refusing a request to poll the jury and in allowing the use of the word "verdict" by plaintiffs' counsel in closing arguments. These issues are also absent from appellant's motion for new trial, and are therefore not preserved for purposes of appeal.
Appellant Seitchik argues that the lower court erred when it permitted the plaintiffs to introduce evidence, in *363 support of the damage claims, that inflationary factors could be expected to cause a six percent (6%) annual rise in the costs of medical care needed by Mrs. Schneider during the remainder of her life. Dr. Goldstein, whose appeal will be more fully discussed later in this Opinion, also alleges error in the introduction of this evidence and its consideration by the jury.
The record shows that the plaintiff presented an economics expert who testified that based on numerous governmental surveys, historical data, and other recognized authoritative source materials, it could be reasonably and modestly estimated that the costs of nursing care, nursing home fees, medications and physicians fees would rise annually during the then foreseeable future at a rate of at least six percent (6%) a year. Thereafter, the plaintiffs presented the testimony of an actuary, who, using the projected life expectancy of the plaintiffs, compiled the expected total costs for future medical expenses and reduced to then present values. In his calculations, the actuary considered the inflation in costs predicted by the economist.
The trial in this case was held several months prior to our decision in Havens v. Tonner, 243 Pa.Super. 371, 365 A.2d 1271 (1976). In Havens, our Court held that it was improper for the trier of facts to consider the speculative factor of inflation in the calculation of damages. While the Havens case involved a so-called "productivity factor", we characterized it as a "substitute for inflation." 243 Pa.Super. at 377, 365 A.2d at 1274. The reasoning in that case is directly applicable here where the factor of inflation was used.
While it appears that the contentions of error raised with respect to the evidence of inflation in medical costs have merit, because of our conclusion that no real harm resulted from the error, we will not reverse or grant a new trial in the particular circumstances of the instant case.
The appellees presented evidence that the medical expenses incurred prior to trial, as well as future medical expenses (using the prohibited inflationary factor) plus lost value of the plaintiff wife's homemaker and bookkeeper *364 services to her husband, when totalled, amounted to over one million dollars. All of these items of damage inured to the plaintiff husband. In addition, the plaintiff husband sought damages for the loss of the society, companionship and consortium of his wife. In that regard his loss was tremendous, as his wife was crippled, handicapped by blindness, and unable to talk correctly as a result of the negligence of defendants.
The jury award of one million dollars to the plaintiff husband was less than the amount "proved" to be due as compensatory damages, even though the amount "proved" for future medical expenses may have included the prohibited factor of inflation. In light of the jury's award in favor of both plaintiffs, it must be assumed that the jury accepted the premise that the plaintiffs were entitled to be compensated for the damages claimed, including the husband's request for damages resulting from the losses of the society, companionship, and consortium of his wife. It is thus evident that the jury, in its award, greatly reduced the amount of money awarded from the amount requested for future medical costs. No appellant has claimed that the award was excessive, but merely that the introduction of the inflationary factor was in error. We specifically find that the award of one million dollars to the husband was not excessive or otherwise unreasonable, in view of the severe injuries and great expense occasioned by the defendants' negligence, as determined by the jury. As a result of that finding, and especially in consideration of the obvious procedural morass which would be created by any other disposition,[4] we deem *365 the error present in the introduction of evidence as to the inflationary factor to have been harmless in the particular circumstances of this case. See Frey v. Nakles, 380 Pa. 616, 112 A.2d 329 (1955); Harmon v. Chambers, 358 Pa. 516, 57 A.2d 842 (1948); Seigfried v. Lehigh Valley Transit Co., 334 Pa. 346, 6 A.2d 97 (1939); Butz v. Manning, 320 Pa. 336, 180 A. 390 (1936); Renner v. Sentle, 151 Pa.Super. 231, 30 A.2d 220 (1943); Pesola v. Tremayne, 108 Pa.Super. 535, 165 A. 661 (1933); A dino v. New Castle and Lowell Railway Co., 83 Pa.Super. 257 (1924).
We therefore find no merit to the allegations of reversible error raised by appellant Seitchik.

APPEAL OF BERNARD GOLDSTEIN, M.D.
Dr. Goldstein raises several issues on appeal, including the claim that it was error to allow plaintiffs to present evidence as to an inflationary factor in future medical costs. We have already discussed that issue in the section of this Opinion dealing with Dr. Seitchik's appeal. Other points raised by appellant Goldstein also cause us to refer to prior discussion in this Opinion because of their similarity to legal issues argued by Seitchik.
For instance, appellant Goldstein contends that he cannot be held liable, on an agency theory, for the negligent acts of the anesthesiologist, Dr. Duval. As earlier explained, the jury, by answer to special interrogatory, determined that Dr. Goldstein was so responsible. Again, we must review the evidence to determine whether the requisite right of control was proven. The record shows that a memorandum was introduced which had been prepared at the time Dr. Goldstein was hired as chief anesthesiologist by the hospital. This memo related that Goldstein was to assure that safe and adequate practices were carried out and that Goldstein was responsible for the quality of the professional services rendered by the anesthesia staff he headed. Moreover, Goldstein admitted he had a right to direct the anesthesia staff to undertake correct procedures and also a duty to correct improper procedures. Where *366 inferences are not entirely clear, questions of agency are for the jury's determination. Tonsic v. Wagner, 458 Pa. 246, 253, 329 A.2d 497, 500 (1974). Based upon the evidence available to the jury, we find no error in the determination that appellant Goldstein was liable on an agency theory for those acts of Dr. Duval which the jury found to be negligent. We also note that the so called "Captain of the Ship" doctrine was held applicable to a physician based upon his position as chief of the anesthesiology department when a staff member was negligent in the administration of anesthetic. Rockwell v. Stone, 404 Pa. 561, 173 A.2d 48 (1961).
Next, it is argued by appellant Goldstein that there was insufficient evidence to support the jury finding that he was personally negligent. There is no merit to that argument. The record shows that Dr. Goldstein entered the operating room shortly after Mrs. Schneider became cyanotic. A five minute period then passed, while appellant Goldstein attended to the patient, checking her breath sounds, blood pressure and other signs, before her heart stopped. It was only at this point that Goldstein removed the endotracheal tube. The plaintiffs' expert testified that Dr. Goldstein should have removed the endotracheal tube within fifteen (15) seconds of his arrival into the operating room, after initially checking to determine whether the trachea was blocked. Plaintiff's testimony indicated that such a blockage was present. In these circumstances, there was clearly sufficient evidence for the jury to conclude that appellant Goldstein was personally negligent in this case.
Appellant Goldstein contends that the court erred in permitting the jury to find he was negligent because Mrs. Schneider's operation was performed in a different operating room than the one which had originally been assigned for her operation. We find no such matter was submitted to the jury for its consideration, in the trial court's charge, or even as a part of the plaintiff's proof at trial. Appellant Goldstein's arguments concerning operating room assignments, in short, is completely unsupported by the record.
*367 It is next contended that it was error to allow the plaintiffs to introduce testimony from a pretrial deposition of Dr. Seitchik at trial, which purported to give a report of Dr. Goldstein's activities in the operating room. It is asserted that the use of this deposition contravened Pennsylvania Rule of Civil Procedure 4020, since Dr. Goldstein had no notice of the deposition and was not present when it was taken.[5] While technical error may have occurred in these circumstances, in view of the fact that Dr. Seitchik was present at trial, testified to the matters material to Dr. Goldstein which had been covered in the deposition, and was then available for cross-examination by Dr. Goldstein's counsel, we find that there is no reversible error in the use of testimony from his deposition.
Dr. Goldstein argues that the lower court erred in allowing evidence to be admitted as to an agency relationship between Dr. Duval and himself. It is claimed that such a relationship was not properly pleaded by the plaintiffs. We find this not to be the case. Paragraph 9 of the Complaint identified Dr. Duval as the agent of the Hospital "and/or" the agent of the "defendant" named in Paragraph 10. Paragraph 10 names several physicians, including Dr. Goldstein. It was obviously a typographical error that "defendant" rather than "defendants" was used in Paragraph 9, for only by reading the word in the plural meaning does the reference to multiple persons named in Paragraph 10 make sense. This typographical error cannot be said to have failed to place Dr. Goldstein on notice that the agency theory would be relied upon by plaintiffs, as Paragraphs 13, 15 and 16 allege liability against Dr. Goldstein both individually and acting through his agents. Dr. Goldstein was clearly afforded notice of the agency theory, and particularly in light of his failure to move for a more specific pleading to cure any ambiguity, we find no merit to this claim of error.
*368 Appellant Goldstein next argues that the lower court erred in refusing to poll the jury when defense attorneys on the sixth day of trial, in the judges chambers, claimed that on the previous day of trial, during defense cross-examination of a witness, a juror or jurors had made comments or facial expressions indicative of a lack of acceptance of the cross-examination questions and efforts. Defense counsel never indicated what comments had been made, but all sought to have the jurors polled to determine if any had arrived at a fixed opinion prior to hearing all of the evidence. The lower court declined to conduct such a poll and we do find that decision not to be improper or abusive of the trial judge's broad discretion in matters pertaining to conduct of civil trials in our Commonwealth. The trial judge ruled that a juror had the right to form an opinion about a particular line of questioning without forming any fixed opinion in the case, that a poll of the type requested might imply a criticism of the juror's feelings about the matter and that the vague statements of counsel did not justify such an unusual step. We agree with those conclusions by the learned trial judge.
Last, appellant Goldstein contends that errors in the court's charge to the jury, particularly on the questions of agency, entitles him to a new trial. We cannot agree. We have reviewed the charge as a whole, including instructions on agency, and find no reversible error. Moreover, since the jury found Dr. Goldstein to be individually causally negligent, any error with regard to the agency aspects of the case would be harmless.
We find no reversible error in this case as to appellant Goldstein.
Affirmed.
HOFFMAN, J., concurs in the result.
SPAETH, J., joins in the majority opinion except in one respect: he disagrees with the statement that "[t]he reasoning in [Havens v. Tonner, 365 A.2d 1271 (1976)] is directly *369 applicable," Majority Slip Opinion at 1279, and reserves decision on whether it was error to admit evidence of the inflationary factor. If error, it was harmless.
JACOBS, President Judge, and PRICE, J., dissent.
WATKINS, former President Judge, did not participate in the consideration or decision of this case.
NOTES
[1] The lower court's opinion states that close observation could be inferred by Dr. Seitchik since the testimony disclosed he was always "very frightened" of the hazards inherent in the process of endotracheal intubation.
[2] This rule is also known as "Star Rule 256".
[3] 2137. Briefs in Cases Involving Multiple Appellants or Appellees
In cases involving more than one appellant or appellee, including cases consolidated for purposes of the appeal pursuant to Rule 513 (consolidation of multiple appeals), any number of either may join in a single brief, and any appellant or appellee may adopt by reference any part of the brief of another. Parties may similarly join in reply briefs.
[4] These problems include the proper procedural avenues to be followed if a new trial, limited to damages, were ordered. One of the physician defendants filed no appeal, apparently being satisfied with the verdict. A reversal could certainly result in prejudice to that defendant. As discussed earlier in this Opinion, the Hospital has waived its appeal rights and would not be legally entitled to a new trial. A new trial as to damages restricted to Drs. Seitchik and Goldstein alone would clearly be inappropriate. Our finding that the verdict was not excessive, and therefore harmless error, is not based on our reluctance to deal with the procedural problems which would be created by any other disposition, but we deem them worthy of this mention.
[5] Rule 4020 provides, inter alia, that at trial any part or all of a deposition, assuming it is admissible, may be used against any party ". . . who was present or represented at the taking of the deposition or who had notice thereof if required. . . ."