445 A.2d 140

**Maria L. HOEKE and Jonathan Hoeke, her husband**

v.

**MERCY HOSPITAL OF PITTSBURGH, Pennsylvania, Dr. Leo R. Kairy and Dr. William J. Cushing**

v.

**Dr. Hassan Jamil TABBARAH.**

**Appeal of William J. CUSHING, MD.**

**Appeal of Dr. Leo R. KAIRYS.**

Superior Court of Pennsylvania.

Argued Sept. 2, 1981.

Filed April 30, 1982.

Petition for Allowance of Appeal Denied Sept. 14, 1982.

48

Patrick R. Riley, Pittsburgh, for appellant (at No. 1270) and for appellee (at No. 1271).

John D. Rhodes, Pittsburgh, for appellant (at No. 1271) and for appellee (at No. 1270).

James F. Manley, Pittsburgh, for Dr. Tabbarah, appellee.

Neil Rosen, Pittsburgh, for Hoeke, appellees.

George M. Weis, Pittsburgh, for Mercy Hospital, appellee.

Before WICKERSHAM, WIEAND and BECK, JJ.

WICKERSHAM, Judge:

This is a professional negligence case filed by the appellees (plaintiffs) against the appellants (defendants) as a result of the care and treatment which was rendered to the woman plaintiff in June of 1971 and thereafter. The essence of this case was that as a result of the negligent performance of an abdominal hysterectomy and negligent postoperative care, Mrs. Hoeke sustained the loss of her right kidney and an above-the-knee amputation of her right leg. The case was tried in the Court of Common Pleas of Allegheny County before the Honorable Marion K. Finkelhor and a jury.

After 19 days of trial during which multiple expert witnesses testified, a verdict was rendered in favor of Maria Hoeke in the amount of $500,000 and Jonathan Hoeke, her husband, in the amount of $50,000 and against defendants

Kairys, an obstetrician/gynecologist, and Cushing, a cardiovascular surgeon. The Mercy Hospital, original defendant, and Dr. Hassan Jamil Tabbarah, additional defendant, were exonerated by the jury.

During the course of the trial, plaintiffs testified in their own behalf and called as witnesses in their case Doctors Kairys and Cushing (for cross-examination); Dr. William Stewart, the anesthesiologist at the time the operation was performed; Dr. Jerry S. Wolkoff, a vascular surgeon and expert witness; Dr. I. Biskind, an obstetrician/gynecologist, and expert witness; Dr. John R. Perri, the orthopedic surgeon who amputated plaintiff's leg; Dr. Martin Cohen, a pathologist at Mercy Hospital; and additional defendant Dr. Hassan Jamil Tabbarah. On the side of the defendants, there was the direct testimony of Drs. Kairys, Cushing and Tabbarah; Dr. Terry Hayashi, an obstetrician/gynecologist and expert witness for the defendant Kairys; Dr. Douglas McDonald, a surgical resident at Mercy Hospital who was present during the operation; Dr. Jessica Lewis, a hematologist; and Dr. Mitchell Webster, a cardiovascular surgeon and expert witness. From this complex record, only the testimony of Drs. Kairys, Cushing and Tabbarah and an excerpt from the testimony of Dr. Wolkoff have been transcribed and reviewed by this court of defendants' issues on appeal is accordingly limited.[1]

Mrs. Maria Hoeke, a citizen of the Netherlands and presently a resident of the United States for the past fourteen years, was a patient of Dr. Leo R. Kairys and had used the services of Dr. Kairys in the birth of her child on September 13, 1966. On or about April 28, 1971, Mrs. Hoeke consulted Dr. Kairys with complaints of excessive bleeding and, after discussion, it was his recommendation that Mrs. Hoeke undergo a hysterectomy.

1. We had to carefully review the briefs of appellees and appellants as well as the opinion of the lower court in order to develop a composite of the facts since, as stated, a limited record on appeal was presented to us. We add, however, that there is very little difference between the factual assertions of all the parties.

Mrs. Hoeke entered the hospital in June, 1971, for the operation which was performed by Dr. Kairys on June 25, 1971. He was assisted by Dr. McDonald, an obstetrical resident of Mercy Hospital at that time.

The allegations and proof of negligence in these proceedings divide between operative and postoperative procedures.

During the operation itself, excessive and profuse bleeding occurred in the operative area and, in the middle of the operation, Dr. Kairys sent for Dr. Cushing, a cardiovascular surgeon. Drs. Kairys and Cushing attempted to ligate the arteries involved to stop the massive bleeding and a right hypogastric artery ligation was performed. Some damage apparently occurred to the ureter and kidney in the course of surgery. The cause of the bleeding was at issue at the trial and Drs. Kairys and Cushing presented diverse testimony on the cause of injury to the ureter and kidney. It was conceded by all parties that damage to the ureter and the kidney were related to the operative procedure. There was no testimony on postoperative negligence on this issue.

It was the testimony of plaintiffs' experts that other operative procedures could have reduced the risk of harm to the leg. After surgery, plaintiff was placed in an intensive care unit. The blood supply was diminished to her right leg and, subsequently, the leg was amputated. Dr. Cushing, who had performed the cardiovascular surgery, left for vacation at the end of June (30th) and Dr. Tabbarah, his associate, was not alerted by Dr. Cushing or called on the case by Dr. Kairys until, in the opinion of Dr. Tabbarah, irreversible damage had already occurred. There was considerable controversy in the testimony as to the symptoms exhibited by the leg and when diagnosis of the diminished blood supply was possible. At issue in the postoperative care of Mrs. Hoeke was whether the leg was properly monitored and procedures taken to determine the status of the blood supply. The kidney, which appeared to be perforated, was removed at a later date.

## APPEAL OF DR. WILLIAM J. CUSHING

The single issue raised by William J. Cushing, appellant, relates to the court's charge to the jury and whether or not the court, in effect, directed a verdict in favor of the plaintiff and against himself.[2]

In his brief Dr. Cushing concedes that having been charged with negligent performance of an undertaking to render services to another, the law set forth by the Restatement, Second, Torts, § 323(a) applies:

§ 323. Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such

harm . . .

The theory under Section 323(a) against Dr. Cushing in this case is that his failure to act in the postoperative period was a proximate cause of the plaintiff's harm. The court's charge on this aspect of the case is contained on pages 54 and 55 of the original record, and reads as follows:

However, when a defendant physician negligently fails to act, or negligently delays in employing indicated diagnostic or therapeutic measures, and his negligence proximately causes injuries to his patient, the plaintiff does not have to prove to a certainty that proper care would have, as a medical fact, prevented the injuries in question. If a defendant physician's negligent action or inaction has effectively terminated his patient's chances of avoiding

2. Dr. Cushing frames the statement of question involved as follows: Did the Court, in its charge to the jury, under *Hamil v. Bashline*, in effect, direct a verdict in favor of the plaintiff vis-a-vis this defendant?
Brief for Appellant-Cushing at 3.

injuries, he may not raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of avoiding injuries and the defendant has destroyed that possibility, he is liable to the plaintiff.

Now, this is particularly true in this case as it relates to the post-operative care. Plaintiff does not have to establish that—plaintiff does not have to prove to a certainty that an arteriogram . . . or some of the other procedures that were discussed would have saved her leg but what the plaintiff has to establish is that the defendant physician's careless action or inaction has effectively terminated the patient's chances of avoiding injury and if there was any substantial possibility of avoiding injury and the defendant destroyed that possibility, plaintiff has established causation and there is liability.

A causal connection between the injuries suffered and the defendant's failure to exercise reasonable care may be established by evidence that the risk of incurring those injuries was increased by the defendant's negligent conduct. In other words, was the risk increased?

Conflicting testimony on both sides of the issue of medical causation was presented. The lower court acknowledged that a jury question as to causation was presented. Dr. Cushing argues in the instant case, however, that while the words "direct a verdict" were not specifically used by the court, the clear import of the court's charge on causation for postoperative care directed a verdict against him on that point.

We do not agree.

The defendant Cushing calls into question the following language in the lower court's charge on the issue of causation:

If a defendant physician's negligent action or inaction has effectively terminated his patient's chances of avoiding injuries, he may not raise conjectures as to the measure of

the chances that he has put beyond the possibility of realization.

Record at 54.

This language is taken almost verbatim from the supreme court's opinion in *Hamil v. Bashline*, 481 Pa. 256, 271–72, 392 A.2d 1280, 1288 (1978) (hereinafter referred to as *Bashline III*). The issue in *Bashline III* was the degree of certainty of proof required before a physician may be held liable for professional negligence. The supreme court resolved this issue by adopting Section 323(a) of the Restatement of Torts, Second and held that evidence would be sufficient to support a finding of proximate causation if it appeared that the defendant's negligence increased the risk of harm to his patient and that the increased risk of harm was in turn a substantial factor in bringing about the injuries to the plaintiff. In reaching this holding, the court quoted with approval the statement that:

> When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable.

*Id.*, 481 Pa. at 271–72, 392 A.2d at 1288 (quoting from *Hicks v. United States*, 368 F.2d 626, 632 (4th Cir. 1968)).

*Bashline III* did not deal with the defendant's right to present expert testimony on the issue of causation but, rather, dealt with the plaintiff's burden of proof on causation in a professional negligence case. Prior to *Bashline III*, a plaintiff had to prove, to a reasonable degree of medical certainty, that the defendant's negligence was the *sole* cause of the plaintiff's injuries. After *Bashline III*, a plaintiff is entitled to have his case submitted to the jury on evidence, from an expert witness, that the defendant's negligence "increased the risk of harm" to the plaintiff. Once the plaintiff has developed such testimony, a defendant may

present expert testimony to the opposite effect which, of course, was the law even prior to *Bashline III.*

In determining whether or not a statement of law given in a charge is erroneous, the charge of the court must be considered in its entirety. *Schneider v. Albert Einstein Medical Center,* 257 Pa.Super. 348, 390 A.2d 1271 (1978). Moreover,

'[a]ppellate courts are disinclined to reverse a judgment of a trial court for alleged inadequacy of the charge unless the inadequacy is such that the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said. . . .'

*Voitasefski v. Pittsburgh Railways Co.,* 363 Pa. 220, 226, 69 A.2d 370, 373 (1949). We believe that the language cited by the defendant Cushing in the lower court's charge, when taken in the context of the charge as a whole, is merely an explanation of the plaintiff's burden of proof on the issue of causation.

Recently, in *Jones v. Montefiore Hospital,* 494 Pa. 410, 416, 431 A.2d 920, 923 (1981), Justice Kauffman said:

Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a *substantial factor* in bringing about the harm inflicted upon a plaintiff. Pennsylvania law has long recognized that this *substantial factor* need not be, as the trial court incorrectly charged, the only factor, i.e., '*that cause* which . . . produces the result.' *Gradel v. Inouye,* 491 Pa. 534, 542, 421 A.2d 674, 678 (1980); *Hamil v. Bashline,* 481 Pa. at 266, 392 A.2d at 285; *Majors v. Brodhead Hotel,* 416 Pa. 265, 273, 205 A.2d 873, 878 (1965). A plaintiff need not exclude every possible explanation, and 'the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence.' *Majors v. Brodhead Hotel,* 416 Pa. at 273, 205 A.2d at 878.

In *Hamil v. Bashline, supra,* we noted that Section 323(a) of the Restatement (Second) of Torts (1965) has long been recognized as part of the law of Pennsylvania, and then held that the effect of that section was to relax the degree of certainty ordinarily required of a plaintiff's evidence to provide a basis upon which a jury may find causation.

## APPEAL OF DR. LEO R. KAIRYS

■ In his second argument advanced in his appellate brief, Dr. Kairys maintains that the lower court erred by precluding the jury from distinguishing injuries pertaining to the leg from those involving the kidney and ureter and awarding damages accordingly. Again, we do not agree.[3]

Due to the complex factual context of this case, negligence could have been found at a number of different points in the care and treatment of Mrs. Hoeke—1) the decision to perform the hysterectomy; 2) the operative procedure of Dr. Kairys; 3) the operative procedure of Dr. Cushing; 4) the postoperative care of the leg by Drs. Kairys, Cushing or Tabbarah. Under the facts, it is impossible to distinguish the negligence of Dr. Kairys and Dr. Cushing in causing the injuries to the leg from their negligence in causing the injuries to the kidney and ureter.

■ The first argument advanced in Dr. Kairys' appellate brief is that the lower court erred in refusing to instruct the jury as to primary and secondary liability as between Dr. Cushing and himself. We do not agree.

3. The first two questions propounded by Dr. Kairys in his appellate brief are set forth as follows:
  1. Did the lower court commit reversible error by refusing to instruct the jury so that it could either return a finding on the issue of primary and secondary liability or make factual determinations enabling resolution of this issue and by incorrectly summarizing the testimony about the responsibilities of the doctor-defendants.
  2. Did the lower court commit reversible error by precluding the jury from distinguishing injuries pertaining to the leg from those involving the kidney and ureter and awarding damages accordingly.
  Brief for Appellant-Kairys at 3.

Both Doctors Kairys and Cushing participated in postoperative vascular care of Mrs. Hoeke. Most importantly, Doctor Kairys testified that he was the physician who ultimately ordered the arteriogram, a vascular procedure, for Mrs. Hoeke which was a crucial issue insofar as the postoperative liability aspect of this case was concerned. Further, Doctor Tabbarah, the additional defendant in this case, testified that Doctor Kairys was "commander in chief of this patient", Reproduced Record at 1167a, that Doctor Kairys was the primary physician in this case and had overall responsibility for the patient and, that Doctor Kairys "wanted to really play as a cardiovascular surgeon in the case." Reproduced Record at 1282a.

Doctor Kairys' testimony reflects that he knew Mrs. Hoeke was suffering from vascular insufficiency, that he did not need vascular consultants to assist him in the diagnosis of this problem and that he recognized and appreciated the risk of the vascular insufficiency which was of course, the cause of the loss of Mrs. Hoeke's right leg. Further, plaintiffs' expert, Doctor Jerry S. Wolkoff, testified that Doctor Kairys, as an obstetrician/gynecologist, fell below the standard of care in his postoperative treatment of Mrs. Hoeke in not detecting and ordering diagnostic procedures in order to correct the vascular insufficiency from which Mrs. Hoeke was suffering.

The issue, therefore, is not primary versus secondary responsibility. The issue is whether the defendant, Doctor Kairys, fell below the standard of care in his duties owed to Mrs. Hoeke as attending physician. In the present case, the respective duties, insofar as standards of care were concerned, were submitted to the jury based upon the testimony presented at the time of trial. Based upon the charge, as well as this testimony, the jury found that both Doctors Kairys and Cushing were responsible for the loss of Mrs. Hoeke's right leg and right kidney.

The defendant Kairys cites *Builders Supply Company v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951) for the proposition that when one actor's negligence is passive in comparison to

the other actor's active negligence, that the passive tort-feasor is entitled to indemnification from the active tort-feasor. Doctor Kairys could hardly be termed a passive tort-feasor. On the contrary, Doctor Kairys at all times participated in the postoperative vascular care of Mrs. Hoeke and realized the risks involved based upon the symptoms which Mrs. Hoeke displayed in the immediate postoperative period. As such, Doctor Kairys was a joint tort-feasor and, hence, was not entitled to indemnification. Accordingly, the lower court did not err in not submitting the issue of indemnification to the jury.

We have carefully reviewed the entire record as submitted to us, the briefs of counsel and have given full consideration to oral argument and applicable legal authority and we find no merit in the remaining contentions of Dr. Kairys in this appeal and will not further discuss them.[4]

Judgment affirmed.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

In this appeal from judgment in a complex, medical malpractice case, an able trial judge inadvertently gave incorrect jury instructions against a cardiovascular surgeon whose operative assistance and post operative care were unable to prevent very unfortunate consequences of a negligently performed hysterectomy. Because the court's instructions were incorrect and deprived the cardiovascular surgeon of a fair trial, I must respectfully dissent from the

---

4. The remaining issues raised by Dr. Kairys were as follows:
   3. Did the lower court commit reversible error by misstating defendant's contentions?
   4. Did the lower court commit reversible error by refusing to offer responsive answers and appropriate instructions when questions were submitted by the jury?
   5. Did the lower court commit reversible error by refusing to withdraw a juror or issue specific instructions after plaintiffs' counsel made inflammatory and prejudicial remarks while closing?
   6. Should a new trial be granted to both defendants if granted to one defendant?
   Brief for Appellant-Kairys at 3.

majority's decision to affirm judgments against the gynecologist and the cardiovascular surgeon.

During performance of a hysterectomy by the appellant, Leo R. Kairys, M.D., on the person of appellee, Maria Hoeke, the patient began to bleed excessively. Dr. Kairys summoned assistance, and Dr. Cushing, a cardiovascular surgeon, responded. In order to stop the bleeding, the common iliac artery and the common iliac vein were repaired, and the internal iliac artery, also known as the hypogastric artery, was ligated. There was a significant factual dispute concerning the external iliac artery, which is a major source of blood to the right leg. Dr. Cushing contended and Dr. Kairys denied that it had a gynecological clamp on it and was contused at the time Dr. Cushing had been summoned. Following surgery, appellee was placed in an intensive care unit. Amputation of the leg became necessary at a subsequent date, however, because of diminished blood supply. There was evidence, if believed, that the amputation of the leg had been made necessary by a complete occlusion of the right, common iliac artery occurring during surgery and not timely diagnosed.

There was a conflict in the testimony concerning the monitoring of appellee's condition post operatively. There was also a dispute regarding the time when and the symptoms by which the diminished blood supply should have been diagnosed. Five days after appellee had been placed in intensive care, Dr. Cushing commenced a planned vacation. There was evidence, also disputed, that his associate, Dr. Hassan Jamil Tabbarah, had not been alerted to appellee's condition and, in any event, did not examine appellee until after irreversible damage had occurred.

Appellee also sustained a loss of her right kidney. The majority incorrectly states that there was no evidence of post operative negligence regarding the loss of the kidney. In fact, appellee contended throughout the trial, as a theory in support of recovery, that the failure to employ adequate diagnostic and therapeutic measures post operatively had been a direct cause of the loss of both the leg and the

kidney. It was uncontested at trial, however, that an original insult to the ureter and kidney had occurred during the operative procedure. Both Kairys and appellee's expert agreed that this damage could have been repaired by the seasonable insertion of a catheter through the injured ureter.

There was additional dispute about which physician had primary responsibility for appellee's post operative care. Appellee contended that Dr. Kairys' negligence during the operative procedure in injuring the right common iliac artery and the ureter, as well as his negligence post operatively, in failing to diagnose and treat the injuries in a timely fashion, had caused the loss of Mrs. Hoeke's right leg and right kidney. Appellee also contended that Dr. Cushing's negligent post operative care of Mrs. Hoeke in not diagnosing and treating the occluded artery and damaged ureter had been a substantial factor in causing the loss of both the right kidney and the right leg.

With respect to the operative and post operative care intended to correct the excessive bleeding which had occurred during the hysterectomy, the trial court charged the jury, in part, as follows:

However, when a defendant physician negligently fails to act, or negligently delays in employing indicated diagnostic or therapeutic measures, and his negligence proximately causes injuries to his patient, the plaintiff does not have to prove to a certainty that proper care would have, as a medical fact, prevented the injuries in question. *If a defendant physician's negligent action or inaction has effectively terminated his patient's chances of avoiding injuries, he may not raise conjectures as to the measure of the chances that he has put beyond the possibility of realization.* If there was any substantial possibility of avoiding injuries and the defendant has destroyed that possibility, he is liable to the plaintiff. (Emphasis supplied.)

The foregoing portion of the charge was taken verbatim from the Pennsylvania Suggested Standard Civil Jury In-

structions, Pa. SSJI (Civ.) 10.03(b) (PBI, 1981), and includes, as the majority notes, language from *Hicks v. United States*, 368 F.2d 626 (4th Cir. 1966),[1] which our Supreme Court quoted with approval in *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978) (Bashline III). However, in *Bashline III*, the issue before the court was *the degree of certainty of expert medical testimony required to establish a prima facie case of medical malpractice* under Section 323(a) of the Restatement (Second) of Torts.[2] Having quoted from *Hicks v. United States*, supra, the *Hamil* court stated, "We agree with this statement of the law and hold that once a plaintiff has demonstrated that defendant's acts or omissions, in a situation to which Section 323(a) applies, have increased the risk of harm to another, *such evidence furnishes a basis for the fact-finder to go further* and find that such increased risk was in turn a substantial factor in bringing about the resultant harm; the *necessary proximate cause will have been made out if the jury sees fit to find cause in fact.*" Id., 481 Pa. at 272, 392 A.2d at 1288 (emphasis supplied) (footnote omitted).

The jury instructions in the instant case suggested that once the jury had found that Dr. Cushing's conduct had terminated the chances of avoiding further injury to the patient, his liability was conclusively established. He could not then be heard to contend that alternate medical or

1.  In *Hicks v. United States*, supra, non-jury trial, the plaintiffs introduced expert testimony, not contradicted by defense experts, that if the decedent had been operated upon, she would have survived. The trial court, however, dismissed the complaint following testimony. On appeal, the government argued unsuccessfully that the trial court was correct, as it was mere speculation to assume that the operation would have been successfully performed.

2.  Section 323(a) of the Restatement (Second) of Torts is as follows:
    § 323. Negligent Performance of Undertaking to Render Services
    One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
    (a) his failure to exercise such care increases the risk of such harm
    . . . .

surgical procedures would have had little or no chance for saving the patient's leg and/or kidney under the conditions found when he was summoned to assist. This is not the law.

In *Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981), the plaintiff had requested the following instruction: "A person who undertakes to render services to another is liable for physical harm resulting from his failure to exercise reasonable care, if that failure increased the risk of harm." Id., 494 Pa. at 415, 431 A.2d at 923. The Supreme Court held:

> Although appellants' submission generally paraphrased Section 323(a), the specific wording requested would *unduly restrict the discretion of the jury,* since it instructs that once a defendant's negligence is found to have increased the risk of harm suffered by a plaintiff, liability must follow. *This misconstrues the function of the jury as contemplated by Section 323(a).* Once the medical testimony has demonstrated, with a reasonable degree of medical certainty, that a defendant's conduct increased the risk that the harm sustained by a plaintiff would occur, even though it has not demonstrated that such conduct alone caused that harm, Section 323(a) *requires the jury to decide whether or not "to go further* and find that such increased risk was in turn a *substantial factor* in bringing about the resultant harm." *Hamil v. Bashline,* 481 Pa. at 272, 392 A.2d at 1288.

*Jones v. Montefiore Hospital,* supra, 494 Pa. at 417 n.8, 431 A.2d at 924 n.8 (emphasis omitted and supplied).

The jury in the instant case was instructed that a defendant physician "may not raise conjectures as to the measure of the chances that he has put beyond the possibility of realization." While a plaintiff is entitled to submit a case to the jury if he or she can establish a prima facie case of malpractice which increased the risk of injury, a defendant *is not* precluded from presenting evidence that the defendant's chances for avoiding harm were non-existent even in the absence of the alleged negligence. After a plaintiff has established " . . . 'that it is more likely than not that the conduct of the defendant was a substantial factor in bring-

ing about the harm.' . . . [A] defendant may present expert testimony to the opposite effect, i.e., the unlikelihood of [avoiding injury] even had the defendant exercised due care; *as always, resolution of conflicting testimony is for the jury." Hamil v. Bashline*, supra, 481 Pa. at 272 n.9, 392 A.2d at 1288 n.9, quoting Comment (a) to Section 433 B of the Restatement (Second) of Torts (emphasis supplied).

The challenged portion of the trial court's instructions to the jury was taken verbatim from *Hicks v. United States*, supra, as quoted in *Hamil v. Bashline*, supra. However, in neither instance was the court discussing jury instructions. "Not every statement of the law even if relevant to the issues should, or even properly may, be read to a jury. Statements in opinions are often couched in argumentative language and may be formulated in words expressive of policy. As such they may mislead a jury. It is better to charge a jury in terms of legal standards and rules." *Slavish v. Ratajczak*, 277 Pa.Super. 272, 277, 419 A.2d 767, 770 (1980).

The effect of the trial judge's charge was to instruct the jury to disregard Cushing's evidence pertaining to causation as speculative. If the members of the jury found that Cushing had been negligent in failing to follow post operatively the condition of the patient and thereafter followed the court's instructions, they would disregard as conjecture Cushing's evidence on the issue of causation and would not resolve the conflicting evidence on that issue. "In determining whether fundamentally erroneous instructions require the grant of a new trial, whether such instructions did or did not bring about the complained of verdict is not the question. If it appears that such instructions *might* have been responsible for the verdict, a new trial is mandatory: *Riesberg v. Pittsburgh & Lake Erie R.R.*, 407 Pa. 434, 180 A.2d 575 (1962)." *Jones v. Montefiore Hospital,* supra, 494 Pa. at 420, 431 A.2d at 925, quoting *Vaughn v. Philadelphia Transportation Co.,* 417 Pa. 464, 468, 209 A.2d 279, 282 (1965) (emphasis in original).

From the foregoing review of the law and the trial court's erroneous jury instructions, I am forced to conclude that Dr.

Cushing is entitled to a new trial. The more difficult question is whether a new trial should be a general new trial or should include only Dr. Cushing. Dr. Kairys contends that Dr. Cushing was primarily responsible for appellee's post operative care but agrees that the trial court's instructions concerning causation were erroneous. The appellees, which include Maria Hoeke, who was awarded damages, and also Mercy Hospital and Dr. Tabbarah who were exonerated by the jury, contend that they have won the verdict and should not be submitted to the rigors and expense of another trial. The issue of causation was so fundamental, however, and so closely contested between the appellee and Drs. Cushing and Kairys that the erroneous instruction thereon can only be viewed as permeating the entire deliberative process. Therefore, I would grant a new trial involving these parties. See: *Smith v. Flannery*, 383 Pa. 526, 119 A.2d 224 (1956); *Mains v. Moore*, 189 Pa.Super. 430, 150 A.2d 549 (1959).

As to Mercy Hospital and Dr. Tabbarah, however, no error in the charge was alleged by any party. The jury's verdict, based upon evidence presented without objection, absolved them from any negligence. Under these circumstances, I perceive no proper reason for subjecting them to a new trial. See: *Stokan v. Turnbull*, 480 Pa. 71, 389 A.2d 90 (1978).

For these reasons, I respectfully dissent.